[Civil No. 4314. Filed October 14, 1940.]

[106 Pac. (2d) 328.]

HENDERSON STOCKTON, Appellant, v. ERNEST W. McFARLAND and the STATE OF ARIZONA, Appellees.

Mr. Henderson Stockton, *in Propia Persona,* and Mr. S. N. Karam and Mr. J. W. Cherry, Jr., for Appellant.

Mr. Chas. A. Carson and Mr. F. C. Struckmeyer, for Appellee Ernest W. McFarland.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Appellee State of Arizona.

LOCKWOOD, J.—Henderson Stockton, hereinafter called plaintiff, filed an action in the superior court of Maricopa county against Ernest W. McFarland, hereinafter called defendant, and the State of Arizona. The complaint alleges, in substance, that plaintiff had duly qualified himself, under article X, chapter 22, Re-

vised Code of 1928, to become a candidate for the Democratic nomination for the United States Senate, at the primary to be held on September 10, 1940, and that defendant had in like manner qualified as a candidate for the same office at the same primary. He alleged, however, that defendant was ineligible to run for or hold the office of United States Senator, or to have his name placed upon any ballot to be used in the primary election for that office.

The reasons set forth for such ineligibility were that defendant had theretofore, in 1938, been elected as judge of the Superior Court of the State of Arizona, in and for Pinal County, for a term commencing in January, 1939, and ending in January, 1943, and that he was, at all the times referred to in the complaint, the duly elected qualified and acting judge of such superior court his term not expiring until January, 1943, and that this made him ineligible for the office of United States Senator because of the limitations of article VI, section 11 of the Constitution of Arizona, which reads, as follows:

"Judges of the Supreme Court and judges of the superior courts shall not be eligible to any office or public employment other than a judicial office of employment, during the term for which they shall have been elected."

The prayer of the complaint is for a declaratory judgment that defendant is ineligible to run for or have his name appear on any official primary ballot for the office of United States Senator, or to hold such office during the period from January, 1939, to January, 1943.

The State of Arizona was made a party to the action on the ground that it was, in some manner not specified, interested in the subject matter and in the relief sought.

Defendant and the State filed a motion to dismiss the action. The matter came on for hearing, and the superior court sustained the motion to dismiss, without leave to amend the complaint, and judgment was rendered accordingly, whereupon this appeal was taken.

Both the oral argument and the briefs filed on the appeal are replete with political discussions and criticisms of each party by the other, and reference to many matters not material to the action. So far as the courts are concerned, the questions submitted, although they do have a political effect, must be decided solely on the law as it exists, and not on the political and moral *animus differendi* of the respective parties.

The particular issue, which we are asked to decide, is whether, under the admitted facts of the case, the provisions of article VI, section 11, *supra,* make defendant ineligible for the office of United States Senator from Arizona during his term of office as judge of the superior court. There are a number of procedural questions which we might consider, but in view of the fact that this is not the first instance where a judge of the superior court has run for a federal office, and there have been more cases in which it has been credibly reported that various judges were considering making such a race, we think it better that the case be decided on its merits, so that the eligibility of judges for the United States Congress may be finally determined.

The precise question, determinative of the issue, is whether a state, through its Constitution or statutes, can add to or take away from the qualifications for a member of Congress prescribed by the Constitution of the United States. The latter Constitution, on this point, reads as follows:

"Article I

"Section 1. All legislative powers herein granted shall be vested in a Congress of the United States.

which shall consist of a Senate and House of Representatives.

"Section 2. . . .

"No Person shall be a representative who shall not have attained to the Age of twenty-five Years and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

"Section 3. . . .

"No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen."

The matter was referred to incidentally during the arguments which occurred when the adoption of the federal Constitution was under consideration by the various colonies. Alexander Hamilton, in The Federalist, LX, said:

" . . . The qualifications of the persons who may choose, or be chosen, as has been remarked upon another occasion, are defined and fixed in the Constitution, and are unalterable by the legislature."

—and so far as we are aware his statement was not questioned at the time.

In 1807 the right of one William McCreery to a seat in Congress was questioned on the ground that the state from which he was elected had added another qualification, which he did not possess, to those fixed by the federal constitutional provision above quoted. The House of Representatives voted to seat McCreery, thus holding, in effect, that a state could not add anything to the federal qualifications for this office. Defendant's alleged disqualification was not the same as that involved in the present case, but the principle was necessarily the same.

In 1855 the exact question arose. Lyman Trumbull was elected by the legislature of Illinois to the Senate

of the United States. Prior thereto he had been elected one of the judges of the Supreme Court of Illinois, for a term of nine years, which term had not expired by several years when he was elected to the Senate. The Illinois Constitution of 1848, article V, section 10, Smith-Hurd Statutes then in force, provided as follows:

" . . . The judges of the supreme and circuit courts shall not be eligible to any other office or public trust of profit in this state, or the United States, during the term for which they are elected, nor for one year thereafter. All votes for either of them for any elective office (except that of judge of the supreme or circuit court) given by the general assembly, or the people, shall be void."

It will be seen that the Illinois provision went far beyond that of our state, for it applied expressly not only to state offices, but to federal offices, and explicitly stated that any votes given for an election to such office should be void. A protest was filed with the United States Senate against the admission of Senator Trumbull, based on this Illinois constitutional provision, and was discussed upon the floor of the Senate. After considerable argument Senator Trumbull was seated, by a vote of 35 to 8. There have been other cases in which the same question was raised in the Congress of the United States, but both Houses have invariably followed the rule that no qualification additional to those imposed by the federal Constitution itself could be imposed by any state. The same matter has been considered by Justices STORY, KENT and COOLEY, in their well-known works on constitutional law, and all have come to the conclusion that the rule is so plain that it is almost beyond discussion.

While these authorities are not courts, and it may be urged their decisions are not binding upon this court, yet the reasoning of such distinguished

writers and the unbroken rule followed by the two Houses of Congress are certainly worthy of our consideration in determining the meaning of the federal Constitution, for of course in case of a conflict it must prevail.

So far as we are aware, the only cases where the point in question has been expressly determined judicially are those of *State* v. *Schmahl,* 140 Minn. 219, 167 N. W. 481; *State* v. *Howell,* 104 Wash. 99, 175 Pac. 569; *Ekwall* v. *Stadelman,* 146 Or. 439, 30 Pac. (2d) 1037.

In the case first cited it appeared that the candidate for Senator was under conviction for a felony, and, therefore, by the state law incapable of holding any public office. The court said:

" . . . The office of United States Senator is a federal office, created by the federal Constitution. The qualifications of those aspiring to or holding the position are also prescribed by the federal Constitution, which the state is without authority to modify or enlarge in any way; and the provisions of the state Constitution imposing restrictions upon the right of sufferage, and upon the right to hold public office, can have no application to the office of United States Senator. . . . "

In the Howell case the situation was on all fours with the present case. The candidate had been a member of the Supreme Court of the state of Washington, and at the time he sought to become a candidate for United States Senator his term had not yet expired. Article IV, section 15, of the state Constitution was substantially in the same language as article VI, section 11 of our Constitution. Emphasis was laid upon the fact that the election in question was a primary election, and that the nomination for candidates at a primary was a matter of state regulation. The court said [104 Wash. 99, 175 Pac. 570]:

" . . . but the fact that the state, in the absence of federal legislation on the subject, has the authority to provide the manner and means of primary elections, does not give the state the authority to determine the qualifications of those seeking nomination for membership in Congress at such elections. When the state of Washington attempted in its Constitution to prevent members of its courts from becoming candidates for any office other than a judicial one during the terms for which they were elected, it came in conflict with the federal Constitution, in so far as it thus attempted to impose additional qualifications for membership in Congress, and in so far that provision is inoperative and void. For offices created by the state, the state by its Constitution and statutes may provide such qualifications and restrictions as it deems proper; but for offices created under other authority we must look to the creating authority for all qualifications and restrictions.''

In the third case, after a full review of the authorities, the court said [146 Or. 439, 30 Pac. (2d) 1039] :

"By section 5 of article 1 of the Federal Constitution, each House is the sole judge of the qualifications of its own members. It is obvious that those qualifications of which they are to judge must be those prescribed by the Constitution of the United States, and by them alone. A Representative is an officer, not of the state but of the federal government. *Lamar* v. *United States*, 241 U. S. 103, 36 S. Ct. 535, 60 L. Ed. 912. The office of Representative being created by the Constitution, and his power being such as is therein defined, there can be no other qualifications than those contained in the Constitution itself, and, in respect to those matters, the provisions of the Constitution are the supreme law of the land.''

It was also urged in this case that the judge had taken an oath that he would not accept any other office, except judicial offices, during the term for which he was elected, but the court brushed this aside as having no effect upon his eligibility for the federal Congress.

The only case which it has even been suggested by plaintiff holds to the contrary is that of *Newberry* v. *United States*, 256 U. S. 232, 41 Sup. Ct. 469, 474, 65 L. Ed. 913. The facts in that case were as follows: Congress, by an act of June 25, 1910, 36 Stat. 822, 2 U. S. C. A., sec. 241 et seq. as amended, attempted to fix the maximum sum which any candidate could spend or advise or cause to be contributed and spent by others to procure his nomination at a primary election or convention. Newberry had been tried and convicted for a violation of this act, and brought the matter for review to the Supreme Court of the United States. The act, it was claimed by the federal government, was authorized by article I, section 4 of the federal Constitution, which reads as follows:

''The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.''

It was contended for Newberry that this provision only applied to general elections, and did not in any manner refer to party nomination, whether by primary or convention, and that Congress was, therefore, without authority to adopt any law regulating the conduct of primaries or of candidates at such primaries. The Supreme Court of the United States, by a 5 to 4 vote, held that under the Constitution, as it existed before the adoption of the Seventeenth Amendment, Congress had no authority to regulate the conduct of primaries, stating:

''We cannot conclude that authority to control party primaries or conventions for designating candidates was bestowed on Congress by the grant of power to regulate the manner of holding elections. The fair intendment of the words does not extend so far; the framers of the Constitution did not ascribe to them any such meaning. Nor is this control necessary in

order to effectuate the power expressly granted. On the other hand, its exercise would interfere with purely domestic affairs of the state and infringe upon liberties reserved to the people.

"It should not be forgotten that, exercising inherent police power, the state may suppress whatever evils may be incident to primary or convention. As 'each house shall be the judge of the elections, qualifications and returns of its own members,' and as Congress may by law regulate the times, places and manner of holding elections, the national government is not without power to protect itself against corruption, fraud or other malign influences.''

Four of the justices dissented, holding that Congress had the same power over primaries that it had over general elections in so far as the choice of members of Congress was concerned, while the fifth, who concurred with the majority, expressly reserved the question as to whether the Seventeenth Amendment, providing for election of United States Senator by a direct vote of the people, instead of by the legislature, as previously, had changed the situation. But nowhere in the opinion is there the slightest intimation or suggestion that a state had the right to add to or take from the qualifications of a member of Congress as fixed by the federal Constitution. Indeed, the fact that in the majority opinion the court quoted from "The Federalist" the same language which we have used above, to our minds is a clear indication that it believed that no state could alter the qualifications imposed by the federal Constitution.

We think that while the Newberry case, *supra,* so long as it stands unreversed or qualified, is authority that Congress may not regulate the *manner* of conducting a primary election or convention in any state, yet it is in no way to be taken as authority that a state may provide additional qualifications to those set forth in the federal Constitution for a candidate for Congress, even at a primary election or convention

held to nominate those whose names shall appear on the ballot at a general election to be held for members of Congress. We hold, therefore, that article VI, section 11 of the state Constitution does not and cannot affect the qualifications of a candidate for the federal Congress, either in a primary or general election.

While some of the findings of the trial court go outside of the issues of the case, and are entirely unnecessary to sustain its decision, the decision was correct under the law and is affirmed.

ROSS, C. J., and McALISTER, J., concur.