THE STATE OF WYOMING, on Relation of CARL A. JOHNSON, Relator.

vs.

ARTHUR G. CRANE, as Secretary of State of the State of Wyoming, and LESTER C. HUNT,

*Respondents.*

(No. 2432; September 28th, 1948; 197 Pac. (2d) 864)

For the Relator the cause was submitted on the brief and oral argument of Clyde M. Watts and Charles E. Lane, both of Cheyenne, Wyoming.

For Respondents the cause was submitted on the brief of Norman B. Gray, Attorney General and Marion

R. Smyser, Assistant Attorney General, both of Chey-
enne, Wyoming, and oral argument by Mr. Gray.

## OPINION

RINER, *Chief Justice.*

This is an original proceeding in this court, being an application by the State of Wyoming on the Relation of Carl A. Johnson, hereinafter usually referred to as the "Relator" for an alternative Writ of Mandamus and other relief against Arthur G. Crane as Secretary of State of the State of Wyoming and Lester C. Hunt as respondents, subsequently usually so mentioned or as set forth respectively in the title of this cause.

The Relator's petition for the writ so far as necessary to understand the questions arising therein is substantially as follows:

After alleging that Relator is a citizen of the United States, a qualified elector of this state, resident therein all his life, having attained the age of forty-five years, and stating his candidacy for the office of United States Senator for the State of Wyoming on the Democratic ticket in the primary election held in said state August

17, 1948; that the name of respondent, Lester C. Hunt was also printed on said ballot at said election as a candidate for the same office; that the respondent Arthur G. Crane is the duly elected, qualified, and acting Secretary of State for this state and as such officer it is his duty to certify to each of the County Clerks of the several counties in this state the names of the persons nominated for the aforesaid office of United States Senator to be placed on the ballots to be used by the electors in the general election next following said primary election, states verbatim:

"That said Respondent, Lester C. Hunt, was on November 5th, 1946, duly elected to the office of Governor of the State of Wyoming, for a term of four years, beginning on January 6th, 1947, and ending on the first Monday in January, 1951; that said Respondent duly qualified on said January 6th, 1947, as Governor of the State of Wyoming, and ever since has been and now is the duly elected, qualified and acting Governor of the State of Wyoming; and as such Governor is not eligible to be elected to the office of United States Senator for the State of Wyoming, during the term for which he was elected Governor, under the provisions of Section 2, Article IV of the Constitution of the State of Wyoming. Said section of said Constitution reads as follows:

" 'Sec. 2. Governor—Qualifications of. No person shall be eligible to the office of governor unless he be a citizen of the United States and a qualified elector of the State, who has attained the age of thirty years, and who has resided five years next preceding the election within the state or territory, nor shall he be eligible to any other office during the term for which he was elected.' "

Relator also avers that in said primary election he received 2,275 votes for his nomination to said office and that:

"he being the only eligible candidate on said Democratic ticket at said Primary Election for the office of United States Senator for the State of Wyoming,

he was therefore duly elected and nominated to be the candidate of the Democratic party for the office of United States Senator for the State of Wyoming, at the General Election to be held on November 2nd, 1948; and that he is entitled to have his name certified by said Respondent Arthur G. Crane, as Secretary of State of the State of Wyoming, to the County Clerk of each of the several counties of the State of Wyoming as such Democratic candidate for said office of United States Senator for the State of Wyoming, at the General Election to be held on November 2nd, 1948."

Additional allegations of the pleading state that Relator:

"has caused demand to be made upon the Respondent Arthur G. Crane, as Secretary of State of the State of Wyoming, to certify the name of Relator as the Democratic nominee for said office of United States Senator for the State of Wyoming, to the County Clerk of each of the several counties of the State of Wyoming, to be placed on the General Election ballot of the Democratic party, for the General Election to be held on November 2nd, 1948, and that said Respondent has refused so to do."

The letter of the Secretary of State evidencing the latter's refusal aforesaid is attached to and made a part of Relator's petition. That letter states as the reason for such refusal that the State Canvassing Board has previously:

"formally canvassed the returns of the Primary Election held August 17, 1948; and such abstract is now filed in the office of the Secretary of State. The said abstract declares Lester C. Hunt to be the Democratic candidate for United States Senator." (See as to the duties and powers of the Secretary of State and the State Canvassing Board under the Direct Primary Law, Sections 31-927 and 31-928, W. C. S. 1945).

The concluding averments of the pleading set forth the reasons why the action of this court is desired and why the matter was not presented to the district court for its ruling thereon.

Relator seeks as relief that an alternative writ of mandamus be issued herein directed to the above named Secretary of State of Wyoming:

"commanding him to certify to the County Clerk of each of the several counties of the State of Wyoming, the name of this Relator as the Democratic nominee for the office of United States Senator of the State of Wyoming, to be placed on the general Democratic ballot for the General Election, to be held on November 2nd, 1948; or to show cause before this Honorable Court on a day certain within a brief period to be fixed by this Honorable Court, why he has not done so";

that a declaratory judgment be entered by this Court adjudging that the respondent, Lester C. Hunt:

"is and was at the time of placing his name upon said Democratic Primary Election ballot not eligible to be a nominee for the office of United States Senator for the State of Wyoming on said Democratic ticket or any other ticket; and that the votes cast for said Respondent Lester C. Hunt were null and void, and of no effect; that this Relator was the only other person named on said Democratic ballot as a candidate for nomination as the Democratic candidate for election as United States Senator for the State of Wyoming; and that Relator having received a large number of votes for said office in said Primary Election, that he was nominated as the Democratic candidate for said office; and that he is entitled to have his name placed on the general Democratic ballot as the Democratic candidate for the office of United States Senator, to be balloted upon at the General Election on November 2nd, 1948";

also that the aforesaid Secretary of State be restrained from:

"certifying the name of said Respondent Lester C. Hunt as the Democratic nominee for the said office of United States Senator for the State of Wyoming, in the said General Election to be held on November 2nd, 1948."

By agreement of counsel for the respective parties, with the approval of this Court, the issuance and serv-

ice of an alternative writ of mandamus was waived and a general demurrer to the Relator's petition was forthwith filed by Respondents, as were also briefs on behalf of both Relator and Respondents within a short time fixed by this Court, and the cause assigned for hearing a few days thereafter. This was all done thus as speedily as possible in order to meet the exigencies of the situation arising on account of the State law of Wyoming imposing upon the Secretary of State the duty of certifying to the several County Clerks in this commonwealth at least twenty days before the general election (Section 31-928, W. C. S. 1945) the name of the proper person nominated at the primary election in August last to be candidate of the Democratic Party to be voted upon at the coming general election which will be held on November 2, 1948. Arguments of the parties on the issues involved were in due course heard and the cause is now for decision by this court.

In addition to the provisions of the Wyoming Constitution set out in the Relator's pleading as given above there must be considered also the following requirements of the Constitution of the United States, viz.:

The third clause of Section 3 of Article 1 of that instrument which reads:

"No person shall be a senator who shall not have attained to the age of thirty years, and been nine years a citizen of the United States, and who shall not, when elected, be an inhabitant of the state for which he shall be chosen."

That portion of clause 1 of Section 5 of Article 1 thereof reading:

"Each house shall be the judge of the elections, returns and qualifications of its own members".

In order perhaps to fully understand the discussion and the cases and authorities presently to be cited and

reviewed, it may be as well to quote also from the national charter the following provisions relative to the coordinate branch of Congress, the House of Representatives, clauses 1 and 2 of Section 2 of Article 1 whose language is:

"The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature.

"No person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

We may very well properly recall also the familiar declaration of the National Constitution in Article 6 thereof, clauses 2 and 3 that:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the *judges in every state shall be bound thereby*, anything in the Constituton or laws of any state to the contrary notwithstanding.

"The senators and representatives before mentioned, and the members of the several state legislatures, and *all executive and judicial officers, both of the United States and of the several states*, shall be bound by oath or affirmation, to support this Constitution".

Especially is this so in view of Section 37, Article 1 of the Constitution of Wyoming which reiterates a part of the declaration just quoted and is embodied in these words:

"The state of Wyoming is an inseparable part of the federal union, and the constitution of the United States is the supreme law of the land."

The two controlling questions in the case at bar argued and submitted for our determination are,

briefly stated (1) Whether the phraseology in Section 2 of Article 4 of the Wyoming Constitution prescribing the qualifications of the Governor of Wyoming, particularly stressed by Relator's petition aforesaid as we have seen, and which declare that that official shall not "be eligible to any other office during the term for which he was elected" now bar his candidacy on the Democratic ticket for and election to the office of United States Senator from this state in the National Congress in the general election of November 2d, 1948; and (2) Whether in the event that we should decide the affirmative on this first question, we should then direct the Secretary of State, Respondent herein, to certify the name of Relator as the proper candidate on the Democratic ticket to be voted on by the electors of this state at the coming general election in November next. It is obvious that if the first question should be resolved by us in the negative, it will then become unnecessary to consider the second question.

The first question above posed may be more abstractly and concretely put in this form: Can a state constitution alter the eligibility qualifications of a person for the office of United States Senator from that state by adding qualifications to those enumerated in the third clause of Section 3 of the United States Constitution and quoted above?

In answering correctly this question it will be of assistance to recall first the views expressed by some of the leaders in the Constitutional Convention held in 1787 in the city of Philadelphia before the Constitution itself was submitted to the states for their approval. James Madison told his colleagues in that body that "The qualifications of electors ought to be fixed by the Constitution." 5 Elliot's Debates on the Federal Constitution, 404. He likewise expressed the view that Congress itself should not have the power

to fix the qualifications of its members and went on to say that if that were to be permitted, the Congress "can by degrees subvert the constitution. A republic may be converted into an aristocracy or oligarchy" and that "Qualifications founded on artificial distinctions may be devised by the stronger in order to keep out partizans of a weaker faction." Ibid. He pointed out also that "the British Parliament possessed the power of regulating the qualifications . . . of the elected and the abuse they had made of it was a lesson worthy of our attention." They had made changes in qualifications "subvervient to their own views, or to the views of political or religious parties." Ibid. Alexander Hamilton who also sat in the Constitutional Convention aforesaid, agreed with these views of Madison for in the Federalist No. LX he said: "The qualifications of the persons who may choose, or be chosen, as has been remarked upon another occasion, are defined and fixed in the constitution, and are unalterable by the legislature." It would appear that arguments of this character might perhaps very well be applied if it were to be decided that the forty-eight state constitutions could each adopt additional provisions for the eligibility of United States Senators.

Turning next to what eminent jurists and authorities on constitutional law have said on the question at bar, we find Judge Story declaring:

"Now, it may properly be asked, where did the states get the power to appoint representatives in the national government? Was it a power, that existed at all before the constitution was adopted? If derived from the constitution, must it not be derived exactly under the qualifications established by the constitution, and none others? If the constitution has delegated no power to the states to add new qualifications, how can they claim any such power by the mere adoption of that instrument, which they did not before possess?

"The truth is, that the states can exercise no powers whatsoever, which exclusively spring out of the existence of the national government, which the constitution does not delegate to them. They have just as much right, and no more, to prescribe new qualifications for a representative, as they have for a president. Each is an officer of the union, deriving his powers and qualifications from the constitution, and neither created by, dependent upon, nor controllable by, the states. It is no original prerogative of state power to appoint a representative, a senator, or president for the union. Those officers owe their existence and functions to the united voice of the whole, not of a portion, of the people. Before a state can assert the right, it must show, that the constitution has delegated and recognized it. No state can say, that it has reserved, what it never possessed." 1 Story On the Constitution, (3d Ed.) Sections 626, 627.

In Chancellor Kent's Commentaries that learned judge and well-known legal author says:

"The question whether the individual states can superadd to, or vary the qualifications prescribed to the representative by the Constitution of the United States, is examined in Mr. Justice Story's Commentaries on the Constitution, ii. 99-103. But the objections to the existence of any such power appear to me to be too palpable and weighty to admit of any discussion." 1 Kent's Commentaries (12th Ed.) 229, Note (f).

The Supreme Court of Washington in State ex rel. Chandler vs. Howell reviewed herein below and the Supreme Court of Oregon in Ekwall vs. Stadelman, Secretary of State, infra, quoting from Judge Cooley's General Principles of Constitutional Law (3d Ed.) pp. 285, 290 state that:

"The constitution and laws of the United States determine what shall be the qualifications for Federal offices, and State constitutions and laws can neither add to nor take away from them. This has been repeatedly decided in Congress, in the case of persons elected to seats therein when provisions in the state constitution, if valid, would render them ineligible."

\* \* \*

"Legislative elections are determined by the body for a seat in which the election is had. This is expressly provided by the constitution in the case of the two houses of Congress, and the judiciary can in no manner interfere with their conclusions."

Mr. Burdick in his work The Law of the American Constitution, pp. 160, 165 declares that:

"It is clearly the intention of the Constitution that all persons not disqualified by the terms of that instrument should be eligible to the federal office of Representative."

\* \* \*

"It is as clear that States have no more right to add to the constitutional qualifications of Senators than they have to add to those for Representatives."

Extremely instructive relative to the question we are now considering are certain decisions made by the two coordinate bodies in the National Congress when this republic had been in existence a comparatively short time. As early as 1807 an analogous problem to that at bar was presented to the National House of Representatives when one William McCreery had his right to a seat in Congress questioned on the ground that the State of Maryland from which he had been elected had added another qualification which he did not possess to those fixed by the Constitution of the United States. After elaborate and full discussion of the matter and after it had been strenuously advocated before the House that the states had the right "to superadd qualifications" nevertheless, the House voted to seat him despite his lack of the superadded qualification asserted by the law of the State of Maryland, the vote being 89 yeas and 18 nays. 17 Annals of Congress 1237.

In 1855 the Senate of the United States was face to face with a similar problem more closely pertinent to

the matter at bar and gave the same answer as its coordinate body had done in the McCreery matter. The facts there were briefly that Judge Lyman Trumbull had been elected to the United States Senate by the Illinois Legislature and the 1848 Illinois Constitution, Article 5, Section 10 had at that time a provision which read:

"The judges of the supreme and circuit courts shall not be eligible to any other office or public trust of profit in this state, or the United States, during the term for which they are elected, nor for one year thereafter. All votes for either of them for any elective office (except that of judge of the supreme or circuit court) given by the general assembly, or the people, shall be void."

Trumbull was sworn in as a senator from Illinois in December 1855. Thereafter Mr. Cass presented a protest against his retaining the senatorial seat, the protest being signed by a number of members from each house of the Illinois Legislature. The protest was based on the fact that Trumbull had been elected Judge of the Supreme Court in June 1852 for the term of nine years. He was elected United States Senator from Illinois in February 1855 having resigned his office as Judge some eighteen months before. His case therefore came within the rule of the Illinois State Constitution aforesaid as the term for which he had been elected would not expire until 1861.

The obvious purpose of the Illinois constitutional prohibition was to guard the purity of the judiciary. Consequently it would seem to be at least as much entitled to the respect of the United States Senate as any conceivable state regulation in regard to the qualification of senators. Notwithstanding that the state constitutional prohibition was disregarded by the Senate, it being decided thereby that a state could not add to the qualifications embodied in the United States

Constitution relative to the eligibility of persons to the office of United States Senator. The vote was 35 to 8 in favor of Mr. Trumbull's being entitled to his seat in the Senate.

In the course of the exhaustive and quite informative debate on the question in the Senate, Mr. Crittenden in the course of his speech in that body on March 3, 1856 said:

"The whole object of the Constitution of the United States could not be more completely subverted by eradicating from the Constitution the positive qualifications which it requires, than it would be in substance, and virtually, by superadding qualifications. If the Constitution has not thought proper to make further qualifications, what is the reason of it? It is because its framers did not desire any other to be made. Did they intend carefully to make these qualifications, and then leave it to the States to make any which, according to their casual will, or wish, or caprice, they might, from time to time, make?" III Am. L. Rev. 427.

Among those who voted to seat Mr. Trumbull were Senators Foote of Vermont, Charles Sumner of Massachusetts and William H. Seward of New York. Senator Foote stating his views on the question very forcibly in the course of his speech remarked:

"A State, either by legislative enactment or by provision of its organic law, has nothing to do with defining the tenure of office, the duties, powers, or jurisdiction of office, or the qualifications for office, of any Federal officer, whose functions are all created, regulated, and controlled by the Federal Government . . . The eligibility of a person to any office must be determined by the Constitution or the law under which the office was created, and by which its jurisdiction and powers and duties are regulated and controlled. The eligibility of a State officer must be determined by the Constitution and laws of the State; and so, too, must the eligibility of a United States officer be determined by the Constitution and laws of the United States.

The one cannot interfere in any case with the qualifications for office in the other, any more than can one independent State or government interfere with the qualifications for office in any other independent State or government . . . The power to add to, implies the power to take from, the prescribed tests of qualification; and the power to do either, implies the power to abolish altogether." Ibid 427. 428.

Senator Seward, himself a lawyer of the highest ability and subsequently Secretary of State under President Lincoln, also made a speech on the same occasion and declared:

"Upon this subject I suppose there is an entire agreement of opinion everywhere, that the Constitution of the United States is the supreme law in regard to the qualifications of senators." Ibid. p. 428.

The attempts of states to require qualifications for the office of the United States Senator other than those named in the third clause of Section 3 of the United States Constitution supra have been uniformly rejected by the state courts as will be seen from the following brief review of cases decided in those courts. We have also examined cases relative to the qualifications of candidates for the national House of Representatives as they are logically also in point here.

The case of State ex rel. Eaton vs. Schmahl, Secretary of State, 140 Minn. 219, 167 N. W. 481 decided in 1918 dealt with a provision of the Minnesota Constitution prohibiting any person who had been convicted of a felony from holding public office. Proceedings were brought to restrain the Secretary of State of Minnesota from placing the name of a candidate, one Peterson, for the United States Senate on the primary election ballot on the ground that "since the filing of his affidavit as such candidate he was convicted of a felony in the federal court, sitting in this state, and is now under sentence by the judgment of

that court to imprisonment for a term of years". The court dismissed the proceedings, asserting that the position of Senator is a federal office created by the United States Constitution and that a state is without authority to enlarge or modify the qualifications for United States Senator prescribed by the National Constitution and also that the provisions of the Minnesota Constitution on the right to hold public office could have no application to the office of United States Senator. Said the Court: "Peterson is not disqualified under the provisions of the federal Constitution."

The same year the Supreme Court of Washington decided the case of State ex rel. Chandler vs. Howell, Secretary of State, 104 Wash. 99, 175 Pac. 569. There a justice of the State Supreme Court had resigned to become a candidate for the National House of Representatives. The Relator sought to enjoin the printing of the former justice's name on the primary ballot inasmuch as Article 4, Section 15 of the Washington Constitution provided that judges of the Supreme Court and also those of the Superior Court should be ineligible to any other office or employment during the term for which they had been elected. It was held that the state could not vary or add to the qualifications set forth in the United States Constitution. The court expressed the view also that the fact that a judge in that state was required to take an oath of allegiance to the State Constitution should not destroy the above holding since the judge is also required to swear allegiance to the United States Constitution and when there is any conflict, the latter, as the superior instrument, must control.

In 1934 the case of Ekwall vs. Stadelman, Secretary of State 146 Ore. 439, 30 Pac. 2d 1037 arose. This was a mandamus proceeding brought by a judge of the Circuit Court to compel the Secretary of the State

of Oregon to accept and file his declaration of candidacy for the office of Representative in Congress. That state had a constitutional provision (Const. Art. 7, Sections 10, 21) which required a judge to take the following oath upon assuming office: "I will not accept any other office, except judicial offices, during the term for which I have been elected." Having in mind this law, the Secretary of State had refused to accept the judge's candidacy for the federal office aforesaid. However, the court granted the writ sought. Concerning the qualifications fixed by the United States Constitution for members of Congress, the court said:

"If no person can be elected to that office who does not possess these qualifications, it follows by a familiar rule of interpretation that any person who does possess them may be elected. The very enumeration of them excludes the idea that, in the adoption of the Constitution, the people intended that there should be any other qualifications."

Later in that year the case of State ex rel. O'Sullivan vs. Swanson, Secretary of State, 127 Nebraska 806, 257 N. W. 255 came before the Supreme Court of Nebraska. It appeared that the state last mentioned had a statute enacting that " . . . no candidate defeated at the primary election shall be permitted to file by petition in the general election next following". The Relator had been defeated as a candidate for governor in the primary election and then he filed by petition his candidacy for the office of United States Senator. The court declined to grant the writ of mandamus to require the Secretary of State to accept this petition and held that the statute applied to federal as well as the state offices. The court maintained that the issue was not whether he could be a candidate but whether he could be nominated by petition and have his name printed on the ballot at the state's expense. The opinion specifically stated that the Relator could still be a

candidate and could be elected if his name were written in by a sufficient number of electors. Concluding its opinion, the court declared:

"Relator has all the qualifications for the office of Senator. The state statute in no manner seeks to add other qualifications. It does not prevent him from being a candidate. It is not unconstitutional, as clearly appears from the decisions of the Supreme Court of the United States."

In 1940 two more pertinent state court decisions came into the case law of the nation. The first one was that of In Re O'Connor, 17 N. Y. S. 2d 758, 173 Misc. 419. It was there held that the federal constitutional qualifications for membership in the lower House of Congress excluded all other qualifications and that the state constitution and laws could neither add to nor take away from them; that where a candidate had all the qualifications enumerated in the United States Constitution, the fact that he was a leader of the communist party in America and openly advocated international communism would not render him ineligible; and also that the fact that the candidate had been convicted of violating a federal statute with consequent sentence to serve a term of four years in a federal prison, but was out on bail pending appeal, did not render him ineligible because the state statute regarding qualifications of candidates related to sentences of imprisonment in the state prison only, and not to a sentence of imprisonment in a federal prison.

In the course of its opinion denying the applications to have the nominating petition of Earl Browder, whose candidacy was involved, rejected, the court detailed the facts presented and expressed its views in part as follows:

"These applications have for their purpose the rejection of the independent nominating petition, heretofore filed in the office of the board of elections, pur-

porting to nominate Earl Browder as a candidate for Representative in Congress from the 14th Congressional District of New York, at the special election set for February 6, 1940. One of these applications is made by Hon. John J. O'Connor, a former Representative in Congress from this state, and the other by Hon. Lambert Fairchild, a former member of the Board of Aldermen of the City of New York. While they differ in some details, both applications are directed principally to the contention that the person nominated is ineligible as a candidate for public office by reason of his open espousal of international communism and his avowed standing as a leader of the communist party in America. They argue that the belief in and advocacy of communism is so alien to the belief in and advocacy of the American system of government that the candidacy of a communist for a seat in the Congress of the United States is incongruous and against public policy. However sympathetic one may be to the principle contended for by these applicants, one must not allow himself to forget that the American system is itself based on law, and that the best service that can be rendered that system is to live by and observe that law."

\* \* \*

"Browder, it appears, has all the qualifications required by the Constitution. To impose upon him the additional qualification that he alter his philosophy of government or abandon his advocacy of international communism or abdicate his position in the communist party of America as a condition of being permitted to run for office would in itself constitute a violation of our own law."

This decision of the Supreme Court of New York seems so far as we have been able to discover, never to have been disturbed or even a review thereof attempted.

The second case to be decided in the year 1940 also involving the question in which we are now interested is that of Stockton vs. McFarland et al., 56 Ariz. 138,

106 P. 2d 328. The Arizona Constitution contains the following language in Section 11 of Article 6 (Arizona Code Ann. 1939):

"Judges of the Supreme Court and judges of the superior courts shall not be eligible to any office or public employment other than a judicial office or employment, during the term for which they shall have been elected."

The defendant in that action was a judge of one of the Superior Courts of that state and the plaintiff was a rival candidate for nomination in the Democratic Party primary to be held September 10, 1940, both men seeking the nomination of that party as its candidate for the office of United States Senator. The plaintiff's action sought a declaratory judgment to the effect that the defendant was ineligible to run or to have his name placed on the primary ballot. The reasons given in plaintiff's complaint why the defendant was ineligible were thus stated by the appellate court:

"The reasons set forth for such ineligibility were that defendant had theretofore, in 1938, been elected as judge of the superior court of the State of Arizona, in and for Pinal County, for a term commencing in January, 1939, and ending in January, 1943, and that he was, at all the times referred to in the complaint, the duly elected, qualified and acting judge of such superior court, his term not expiring until January, 1943, and that this made him ineligible for the office of United States Senator because of the limitations of Art. VI, sec. 11 of the Constitution of Arizona," above quoted.

The court indicated that:

"The precise question, determinative of the issue, is whether a state, through its Constitution or statutes, can add to or take away from the qualifications for a member of Congress prescribed by the Constitution of the United States."

The Superior Court of Maricopa County had entered

a judgment sustaining a motion to dismiss the action without leave to amend the complaint. This ruling after a careful review of the pertinent authorities, the Supreme Court of Arizona affirmed, holding that, as the opinion states:

" . . . Art. VI, sec. 11 of the State Constitution does not and cannot affect the qualifications of a candidate for the federal Congress, either in a primary or general election."

In 1942 we find the case of State ex rel. Sundfor vs. Thorson, Secretary of State, 72 N. Dak. 246, 6 N. W. 2d 89, 143 A. L. R. 599 decided. This was an application for an original writ by the State of North Dakota on the relation of Sundfor to restrain Thorson as Secretary of State from certifying the name of Charles R. Robertson as an individual nominee for the office of Representative in Congress to be printed on the ballot to be voted upon at the general election thereafter to be held on November 31, 1942 and to restrain the County Auditor of Burleigh County from having Robertson's name printed on said ballot. Respondents moved to quash an order to show cause and to have the proceeding dismissed. The State of North Dakota had a statute (C. 141, Laws of North Dakota 1939) which provided:

"That any person who was a candidate for nomination for office at any primary election in any year and who was defeated for said office shall not be eligible as a candidate for the same office at the ensuing general election."

The title of the Act was:

"An act prohibiting any person who was a candidate for nomination for office at a primary election and who was defeated for said office, from being a candidate for the same office at the ensuing general election."

The pertinent facts in the case so far as they need be given here were as stated by the court:

"At the primary election, held June 30, 1942, Charles R. Robertson was a candidate for nomination for the office of Representative in Congress on the Republican Party ballot. He was defeated at said election and other candidates were nominated. He now seeks election to the office as an independent candidate."

Distinguishing the Nebraska case of O'Sullivan vs. Swanson supra, after pointing out that the qualifications for persons seeking the office of Representative in Congress as fixed by the United States Constitution are:

". . . controlling. They are paramount and, insofar as the statutes of any state conflict with them or with laws enacted pursuant to their provisions by the Congress, such statutes must fall,"
the Supreme Court of North Dakota said in the final paragraph of its opinion:

"Chapter 141, supra, the statute in question in the instant case is quite different from the Nebraska statute. It goes much farther. It does add another qualification. There can be no misunderstanding of its words. They speak for themselves and require no interpretation. There is no room for ambiguity or uncertainty. The statute prohibits any person who was a candidate at the primary for nomination for any office and who was defeated, from being a candidate for the same office at the ensuing general election. This is the clear purport of its title. And the body of the act itself emphasizes this legislative intent, because it says such an one shall not be eligible as a candidate. Words could not be made plainer. Eligible means 'fitted or qualified to be chosen or elected; legally or morally suitable; as, an eligible candidate.' Webster's New International Dictionary. See, also, 29 C. J. S., Eligible, p. 663, and cases cited. So considering the statute, we hold that petitioner's application must be denied and the proceeding dismissed."

The application was accordingly denied and the proceeding dismissed.

In 1944 the case of Buckingham vs. State ex rel. Killoran, 42 Del. 405, 35 Atl. 2d 903 was determined.

That decision, while not in point here as to its facts, is interesting as declaring the views of the Supreme Court of Delaware as follows:

"The authorities are uniform that where the qualifications for Federal offices are set out in the Federal Constitution a State may not change those qualifications or add others thereto. This is true even though the State regulation be according to the Constitution of the State."

See also Watson vs. Cobb, 2 Kans. 32, 58; State of Ohio vs. L. A. Russell, 8 Oh. N. P. Rep. 54.

The most recent case in point which has come under our notice is that of State ex rel. Wettengel vs. Zimmerman, Secretary of State, 249 Wis. 237, 24 N. W. 2d 504. This litigation was decided in 1946. There a petition was filed in the Supreme Court of Wisconsin by Wettengel for leave to commence an original action to have the court cancel the certificate issued by the State Board of Canvassers designating Joseph R. McCarthy as the senatorial candidate for the Republican Party and to compel it to issue one designating Robert M. La Follette as the candidate for that position. By a unanimous decision, the court dismissed the petition on the ground that it had no jurisdiction.

The main argument of the petitioner in that case was based upon the provision of Section 10, Article 7 of the Wisconsin Constitution which declares that:

"Each of the judges of the supreme and circuit courts . . . shall hold no office of public trust, except a judicial office, during the term for which they are respectively elected, and all votes for either of them for any office, except a judicial office, given by the legislature or the people, shall be void."

The petitioner contended that as McCarthy was a Circuit Judge the office was clearly an office of public trust and hence he could not be eligible to hold such

office under the provisions of the Wisconsin Constitution set forth above. The court held, however, that since the petition concerned the choice of a United States Senator, the decision must rest not upon the rule declared by the state constitution, but should be rendered in accordance with federal law, especially Sections 3, 4 and 5 of Article 1 of the United States Constitution. Section 4 of that instrument not hereinbefore quoted provides in part:

"The times places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of choosing senators."

Under the section last set forth, the question as to whether the term "elections" included primary elections was decided in United States vs. Classic, 313 U. S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 by an affirmative holding that it did. This holding was recently affirmed in Smith vs. Allwright, 321 U. S. 649, 64 S. Ct. 757, 88 L. Ed. 987, 151 A. L. R. 1110 overruling Grovey vs. Townsend, 295 U. S. 45, 55 S. Ct. 622, 79 L. Ed. 1292, 97 A. L. R. 680 which held to the contrary.

The Wisconsin court declared in the course of its opinion that:

"Neither by constitutional provision nor legislative enactment can the state of Wisconsin prescribe qualifications of a candidate for nomination for the office of United States Senator in addition to those prescribed by the constitution of the United States."

Under the decisions reviewed above, the holdings of both Houses of Congress, the persuasive utterances of lawyers, statesmen, judges, and legal authors of the most eminent authority, we conclude that the result to be reached in the case at bar cannot be at all in doubt.

No authorities are called to our attention by Relator which we regard as affecting the weight to be given such decisions, holdings and utterances. Our attention has, however, been directed by Relator to the case of Newberry vs. United States, 256 U. S. 232, 41 S. Ct. 469, 65 L. Ed. 913. Concerning the opinion handed down in that case, it was said in Stockton vs. McFarland supra;

"But nowhere in the opinion is there the slightest intimation or suggestion that a state had the right to add to or take from the qualifications of a member of Congress as fixed by the Federal Constitution. Indeed, the fact that in the majority opinion the court quoted from 'The Federalist' the same language which we have used above, to our minds is a clear indication that it believed that no state could alter the qualifications imposed by the Federal Constitution."

Without extending this opinion further, though much more could be said in support of the conclusion which we think should be announced herein, the judgment of this court will be that the demurrer of the respondents is sustained, the Writ of Mandamus denied and the Petition of Relator dismissed. Necessarily we do not reach the second question hereinabove suggested.

*Writ Denied and Petition Dismissed.*

KIMBALL,J. and BLUME, J. concur.