OKLAHOMA STATE ELECTION BOARD, Grace Huddlin, in her official capacity as Chairman of the Oklahoma State Election Board; Drew Neville, in his official capacity as Member of the Oklahoma State Election Board, and Lee Slater, in his official capacity as Secretary of the Oklahoma State Election Board, Appellants,

v.

Andy COATS, Appellee.

No. 54756.

Supreme Court of Oklahoma.

April 21, 1980.

---

Jan Eric Cartwright, Atty. Gen. of Okl. by David W. Lee, Asst. Atty. Gen., Chief, Criminal Division, and Mary Bryce Leader, Legal Intern, Oklahoma City, for appellants.

Turner, Turner & Green by Robert J. Turner, Oklahoma City, for appellee.

HODGES, Justice.

The correct interpretation of 19 O.S.Supp. 1974 § 215.8 is contested on appeal. This statute precludes district attorneys from running for any office which has a term, any portion of which is the same as the

term for which the district attorney is elected.[1]

The appellee, Andy Coats, is the District Attorney for the Seventh Judicial District of the State of Oklahoma. On December 28, 1979, the district attorney filed a petition for declaratory judgment, seeking a ruling on the applicability and validity of the statute, and asserting that it could not be applied to prevent his candidacy for the United States Senate. He contended that the statute was inapplicable because it added qualifications not imposed by Art. I, § 3 of the United States Constitution.[2]

The following pertinent facts were stipulated by the litigants: 1) The district attorney was elected in 1978; his term of office commenced January 1, 1979, and will end January 1, 1983; 2) The district attorney intends to be a candidate for the United States Senate from the State of Oklahoma; 3) The district attorney meets all of the necessary constitutional qualifications; and 4) The term of the office presently held by the district attorney overlaps with the term of the senate office he seeks.

The trial court held that: 1) The qualifications to become a candidate for the United States Senate are delineated in Art. I, § 3, cl. 3 of the United States Constitution, and that no additional qualifications can be prescribed by the Legislature; 2) The application of 19 O.S.Supp.1974 § 215.8 constitutes the imposition of additional qualifications and would render the district attorney ineligible to be a candidate for the United States Senate; 3) The statute on its face would prevent the district attorney from becoming a candidate for any office, even if he resigned as district attorney, until his term expires on December 31, 1982; 4) The Legislature has not placed similar restrictions on the candidacy on other state officeholders, and 5) The Legislature created a distinction without a rational basis which serves no compelling state interest, by imposing restrictions on district attorneys and not on other state officeholders, thus violating the Fourteenth Amendment of the United States Constitution by failing to afford district attorneys equal protection of the laws.

The issues on appeal are whether 19 O.S. Supp.1974 § 215.8 imposes an additional qualification on the district attorney's candidacy, and if the statute violates the equal protection clause of the Fourteenth Amendment.

I

Many states, as well as the Federal Government have enacted statutes which restrict the political activities of public employees. The purpose of these restrictions is not to arbitrarily restrain public servants from engaging in political activities. Rather, these prohibitions were designed to protect those in public service from unjust campaign solicitations, to free them from political pressure, and to promote efficiency and integrity in the discharge of official duties.[3] The jurisdictions which have considered the problem, have held that the right of public employees to engage in political campaigns, and to become candidates for public election are subject to some degree of restriction.

■ The general rule is that when the constitution establishes specific eligibility requirements for a particular constitutional office, the constitutional criteria are exclusive. The legislature, except where expressly authorized to do so, has no authority

---

1. It is provided by 19 O.S.Supp.1974 § 215.8 that:
   "The district attorney shall be ineligible to be a candidate for any office which has a term any portion of which is the same as the term for which he was elected."

2. The United States Constitution, Art. I, § 3 states:

"No person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen. . . ."

3. Ex parte Curtis, 106 U.S. 371, 373, 1 S.Ct. 381, 383–384, 27 L.Ed. 232, 235 (1882).

to require additional or different qualifications for a constitutional office.[4]

In *Riley v. Cordell*, 200 Okl. 390, 194 P.2d 857 (1948), a Supreme Court Justice attempted to run for two offices which had concurrent terms. He was a candidate for the United States Senate and re-election to the Supreme Court. An analogous statutory provision, 20 O.S. 1941 § 5, provided that no Justice of the Supreme Court could become a candidate for any office other than a judicial position during the term for which he was elected. The Court held that the provisions of Art. 1, § 3 of the United States Constitution, prescribing the qualifications of United States Senators, are exclusive, and that the prohibitionary statute, 20 O.S. 1941 § 5, did not prevent a Justice of the Oklahoma Supreme Court from becoming a candidate for the nomination of United States Senator. However, it was held that the Justice could not become a candidate for the nomination of two offices at the same primary election; and that by filing his Notification and Declaration of Candidacy for United States Senator, his Declaration for Candidacy for Supreme Court Justice was automatically withdrawn. The Court reasoned that because incompatible offices cannot be held by a single individual, neither may they be sought by one candidate in the same primary election.[5]

The appellants contend that the rule of law enunciated in the *Riley* case should apply with equal force and logic to the facts of the present case. It is argued that because of the realities of a modern political campaign the rationale should be applied not only to a public officer, but also to one who actively engages in a campaign for a second office. It is also argued by appellants that § 215.8 does not alter the qualifications of a candidate for the office of United States Senator, but that it is a proper exercise of control over a local state office. It is the contention of appellants that: the disability attaches not to the individual district attorney, but to the office; the Legislature did not alter the qualifications but, rather, properly exercised control over a local Oklahoma office; and that the impediment does not prevent a candidacy for another office if the post as district attorney is resigned before doing so.

The district attorney counters by citing *Baskin v. State*, 107 Okl. 272, 232 P. 388, 389, 390 (1925) in which this Court held that the language of the Okla.Const. art. 5, § 23 precluded any member of the legislature from receiving an appointment from the Governor or the Legislature "during the term for which he shall have been elected." Baskin was a state legislator who was appointed to a district judgeship during his legislative term. The Court held even though Baskin had resigned his legislative office, he could not accept the judicial appointment during the duration of the legislative term for which he was elected. The analogy is drawn by the district attorney between § 215.8 and art. 5, § 23, and it is asserted that *Baskin* requires the holding that the district attorney cannot be a candidate for the United States Senate, until his term as District Attorney expires on January 1, 1983, whether he resigns his office or not.

*Baskin* is distinguishable because it applied to an appointment by the governor, rather than to a candidate filing for an elective office. The obvious purpose of the constitutional provision was to prevent an officeholder from obtaining governmental favors during a term in which he/she might be called upon to determine favored legisla-

4. *Cornell v. McAllister*, 121 Okl. 285, 249 P. 959, 961 (1926); see also Annot., "Legislative Power To Prescribe Qualifications For Or Conditions of Eligibility To Constitutional Office," 34 A.L.R.2d 155 (1954).

5. The Court explained its decision in *Riley v. Cordell*, 200 Okl. 390, 194 P.2d 857, 861 (1948): ". . . [T]he public has a right to know—in the case of attempted incompatible office holding—which office is held and which surrendered so as not to be left to the uncertain whim of the office holder as to which office is held and which surrendered, so have the electors the right to know when exercising the right of franchise that the candidate in whose favor their votes are cast will qualify for the office for which, by his solemn declaration of candidacy, he has solicited their confidence and vote."

tion and appropriations. The *Baskin* Court said:

" . . . The . . . provision of the Constitution was enacted to prevent the members of the legislative branch of the government from occupying a dual position, and to prohibit members of the Legislature from deriving directly or indirectly any pecuniary benefit of legislative enactments or appropriations made by them. The members of the Legislature are the sole judges subject to a veto of the Governor of the amount to be appropriated each year to carry into effect the executive and judicial departments. This act was to prevent and prohibit members of the Legislature, after making appropriations for other departments, and after the adjournment of the Legislature from accepting employment from that branch of the government, and receive a pecuniary benefit from the money they appropriated.

We agree that the statute in question lends itself to two differing constructions. However, where there are two possible interpretations, one of which would render the statute unconstitutional, the Court should adopt the construction which upholds the statute, unless the repugnancy to the constitution is shown beyond a reasonable doubt.[6]

Under the facts as presented, we find that the statute, 19 O.S.Supp.1974 § 215.8, does not impose additional qualifications on the candidacy of district attorneys who choose to run for a federal public office. The statute imposes an impediment to those who seek to remain in office and simultaneously run for another office. The impediment, however, attaches to the office and not to the officeholder. One who gains an elective public office is not legally committed to finish the term. The officeholder may resign or retire at any time he chooses. At the point of resignation, the officeholder is no longer the district attorney; and because he meets all the necessary criteria for a United States senator, he is then an eligible candidate.

## II

The trial court found that 19 O.S.Supp. 1974 § 215.8 denied district attorneys equal protection of the law and created a distinction without a rational basis.

There are two standard tests used to review legislative classification in cases involving the equal protection clause. The first is the basic and conventional standard for reviewing discrimination or differentiation of treatment between classes of individuals. It manifests restraint by the judiciary in relation to the discretionary act of the legislature, and invests legislation involving differentiated treatment with a presumption of constitutionality. This standard requires merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. Under this rationale, if a classification does not permit one to exercise the privilege while refusing it to another of like qualifications, under similar conditions and circumstances, it is unobjectionable. The classification must be neither arbitrary nor capricious, and it must bear a rational relationship to the objective sought to be accomplished. A classification is constitutional if there is a reasonable classification and reasonable opportunity for uniform or equal incidence on the class created.[7] The appellants' position is that the statute is constitutional because: all district attorneys in like circumstances are treated equally; and the burden is on the appellee to show that it is essentially arbitrary and clearly unreasonable. The burden of demonstrating the invalidity of classifications

---

6. *City of Norman v. Liddell,* 596 P.2d 879 (Okl. 1979); *Bond v. Phelps,* 200 Okl. 70, 191 P.2d 938 (1948).

7. See *Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600, 617; *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Skinner v. Okl.,* 316 U.S. 535, 561, 62 S.Ct. 1110, 86 L.Ed. 1656, 1660 (1942); *Sowders v. Oklahoma Tax Commission,* 552 P.2d 698 (Okl.1976); *State v. Rambo,* 448 P.2d 1012 (Okl.1969). See also "Development In The Law Equal Protection," 82 Harv.L. Rev. 1064 (1969).

under the traditional standards rests squarely on the party who assails it.[8]

 A more stringent test is applied, however, in cases involving suspect classifications which touch on fundamental interests. In these instances, the United States Supreme Court has adopted an attitude of active and critical analysis which subjects the classification to strict scrutiny. Under the strict standard applied in such cases, the state bears the burden of establishing, not only that it has a compelling interest which justifies the law, but that the distinctions drawn by the law are necessary to further its purpose.[9]

 Apparently, courts addressing equal protection issues on facts similar to those in this case have generally held that the rational basis standard is applicable and that the test is whether the statute is reasonably necessary to a legitimate state interest.[10] We find that the statute is not invidiously discriminatory under either the rational basis or strict scrutiny test. The statute preserves the efficiency, objectivity and integrity of the district attorneys and prevents any possible abuse to the office during the campaign to promote the officeholder's candidacy.[11]

REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., WILLIAMS, J., REYNOLDS, S. J., and DOOLIN, HARGRAVE and OPALA, JJ., concur.

SIMMS, J., dissents.

BARNES, J., certified his disqualification. The Honorable LESTER A. REYNOLDS was appointed in his stead.

SIMMS, Justice, dissenting.

I respectfully dissent.

The statute in question, 19 O.S.Supp.1974, § 215.8, imposes additional qualifications on candidates seeking nominations for the United States Congress. A state may not through its Constitution or statutes, add to or take away from the qualifications for a member of Congress prescribed by the Constitution of the United States.

We have already passed on this question. In *Riley v. Cordell*, 200 Okl. 390, 194 P.2d 859 (1948), the first syllabus by the Court provides:

"The provisions of Article I, Section 3, of the Constitution of the United States prescribing the qualifications of United States Senators are exclusive, and 20 O.S. 1941, § 5, providing that 'no justice of the Supreme Court shall become, during the term for which he may be elected or appointed, a candidate for any office other than a judicial position', does not prevent a justice of the Supreme Court of Oklahoma from becoming a candidate for the nomination for United States Senator."

Other courts have reached the same result when presented with the question, see e. g., *Stockton v. McFarland*, 56 Ariz. 138, 106 P.2d 328 (1940); *State v. Crane*, 65 Wyo. 189, 197 P.2d 864 (1948); *Wettengel v. Zimmerman*, 249 Wis. 237, 24 N.W.2d 504 (1946).

The fact that we may have other statutes which also impose similar unconstitutional restrictions upon other officers of the state who choose to run for federal office, affords no support for upholding this statute.

---

8. *Corporation Commission v. Lowe*, 281 U.S. 431, 50 S.Ct. 397, 74 L.Ed. 945 (1930); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

9. *Westbrook v. Mihaly*, 2 Cal.3d 765, 784, 87 Cal.Rptr. 839, 852, 471 P.2d 487, 500 (1970) citing Justice Marshall's dissent in *Hall v. Beals*, 396 U.S. 45, 52, 90 S.Ct. 200, 203, 24 L.Ed.2d 214 (1969).

10. See Annot., "Validity of Statutes Restricting Political Activities of Public Officers Or Employees," 28 A.L.R.3d 717 (1969) for cited cases.

11. *Morial v. Judiciary Commission of State of La.*, 565 F.2d 295 (5th Cir. 1977); *Wilson v. Moore*, 346 F.Supp. 635 (N.D.W.Va.1972); and *Holley v. Adams*, 238 So.2d 401 (Fla.1970).