2004 WY 49

Rich CATHCART, Rodney "Pete" Anderson, Scott Zimmerman and Keith Kennedy, Appellants (Plaintiffs),

v.

Joseph B. MEYER, Wyoming Secretary of State, in his official capacity, Appellee (Defendant),

and

Jack Adsit and U.S. Term Limits Foundation, Appellees (Intervenors/Defendants).

Joseph B. Meyer, Wyoming Secretary of State, in his official capacity, Appellant (Defendant),

v.

Rich Cathcart, Rodney "Pete" Anderson, Scott Zimmerman and Keith Kennedy, Appellees (Plaintiffs).

Jack Adsit and U.S. Term Limits Foundation, Appellants (Intervenors/Defendants),

v.

Rich Cathcart, Rodney "Pete" Anderson, Scott Zimmerman and Keith Kennedy, Appellees (Plaintiffs).

Nos. 04–32, 04–33, 04–34.

Supreme Court of Wyoming.

May 4, 2004.

Representing Rich Cathcart, Rodney "Pete" Anderson, Scott Zimmerman and Keith Kennedy: Harriet M. Hageman and Kara Brighton of Hageman & Brighton, Cheyenne, Wyoming; and Timothy M. Stubson of Brown, Drew & Massey, LLP, Casper, Wyoming.

Representing Joseph B. Meyer, Wyoming Secretary of State: Patrick J. Crank, Attorney General; Michael R. O'Donnell, Chief Deputy Attorney General; and Michael L. Hubbard, Deputy Attorney General, Cheyenne, Wyoming.

Representing Jack Adsit and U.S. Term Limits Foundation:: Sasha Johnston and Daniel E. White of Woodard & White, P.C. Cheyenne, Wyoming.

Representing Amicus Curiae, Wyoming Term Limits Group: Bradley T. Cave and Lawrence J. Wolfe of Holland & Hart, LLP, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Two incumbent state legislators and two electors challenge the constitutionality of Wyoming's initiative-engendered term limit statute. These cases come to us from the district court via W.R.A.P. 11 certified questions and W.R.C.P. 54(b) certification of an order rejecting affirmative defenses. We affirm the district court's rejection of the affirmative defenses and we find the term limit statute unconstitutional.

## CERTIFIED QUESTIONS

1. Is the term limit law for state elected officials (Wyo.Stat.Ann. § 22–5–103), whether adopted by initiative or legislative action, constitutional and enforceable, given the qualifications enumerated in Article 6, §§ 2 and 15; Article 3, § 2; and Article 4, §§ 2 and 11 of the Wyoming Constitution?

2. Does the term limit law (Wyo.Stat. Ann. § 22–5–103) violate the appellants' right to vote, given the provisions of Article 6, § 2 of the Wyoming Constitution?

3. Do the reserved powers of the people under the Wyoming Constitution include the right to alter the government by initiative or by statute with regard

to the time period any one person can hold any particular state office? [1]

4. Is this action barred by the doctrine of laches or by a statute of limitations?

## PROCEDURAL BACKGROUND

[¶ 2] On January 7, 2004, two Laramie County state legislators and two Laramie County residents (collectively "the appellants") filed a complaint in district court seeking a declaration that Wyoming's term limit law is unconstitutional, and asking the district court to enjoin the secretary of state from enforcing it. On January 23, 2004, the secretary of state answered the complaint by asserting the constitutionality of the statute and by asserting the affirmative defenses of standing, laches, estoppel, waiver, adequate remedy at law (repeal), failure to state a claim upon which relief can be granted (no justiciable controversy/political question), failure to state a claim upon which relief can be granted (statute of limitations in Wyo. Stat. Ann. § 1–3–109 (LexisNexis 2003)), failure to state a claim upon which relief can be granted (statute of limitations in Wyo. Stat. Ann. § 22–24–122 (LexisNexis 2003)), and the constitution's reservation to the people of the right to reform, alter or abolish government in any manner as they may think proper.

[¶ 3] On February 13, 2004, the district court allowed a Wyoming citizen and a national research and education foundation dedicated to the preservation of term limit legislation to intervene as party defendants. On the same date, the district court also entered the order rejecting affirmative defenses that is the subject of these consolidated appeals. Finally, on February 20, 2004, the district court entered its Revised Order Certifying Questions. On February 23, 2004, this Court entered its Notice of Agreement to Answer Certified Questions, Order Consolidating Related Appeals, Order Establishing Briefing Schedule, and Order of Setting for Oral Argument. The next day, a Supplemental Order on Briefing of Certified Questions ordered briefing on certain additional

---

1. For clarity, the wording of this question differs slightly from its wording in our order accepting certification.

constitutional provisions. Oral arguments were heard on March 24, 2004.

## FACTS[2]

[¶ 4] In the 1992 general election, Wyoming voters approved an initiative that limited the number of terms of office that could be served by certain of its elected federal and state officials.[3] The relevant portion of that initiative, as amended by the legislature in 1995, is currently found at Wyo. Stat. Ann. § 22-5-103 (LexisNexis 2003):

> **§ 22-5-103. Legislative service; limits on ballot access; state offices**
>
> (a) Notwithstanding any other provision of Wyoming law, the secretary of state or other authorized official shall. not certify the name of any person as the nominee or candidate for the office sought, nor shall that person be elected nor serve in that office if the following will occur:
>
> (i) The person, by the end of the current term of office will have served, or but for resignation, would have served eight (8) or more years in any sixteen (16) year period in the office for which the candidate is seeking nomination or election, except, that any time served in that particular office prior to January 1, 1993, shall not be counted for purposes of this term limit. This provision shall apply to the offices of governor, secretary of state, state auditor, state treasurer, and state superintendent of public instruction;
>
> (ii) The person, by the end of the current term of office will have served, or but for resignation, would have served twelve (12) or more years in any twenty-four (24) year period as a state representative, except that any time served in the office of state representative prior to January 1, 1993, shall not count for purposes of this term limit;
>
> (iii) The person, by the end of the current term of office will have served, or but for resignation, would have served twelve (12) or more years in any twenty-four (24) year period as a state senator, except that any time served as a state senator prior to January 1, 1993, shall not be counted for purposes of this term limit.

[¶ 5] The initiative also contained a specific statement of "findings and declarations":

> (a) The people of the state of Wyoming hereby find and declare as follows:
>
> (i) State and federal representatives who remain in office for extended periods of time become preoccupied with their own reelection and for that reason devote more effort to campaigning for their office than making legislative decisions for the good of the people of Wyoming;
>
> (ii) State and federal representatives have become too closely aligned with the special interest groups who provide contributions and support for their reelection campaigns, provide special favors and intense lobbying, all of which causes corruption or the appearance of corruption of the legislative system;
>
> (iii) Entrenched incumbency has discouraged qualified citizens from seeking office and lead to a lack of competitiveness and a decline in robust debate of issues important to the people of Wyoming;
>
> (iv) Due to the appearance of corruption and the lack of competitiveness for entrenched incumbency seats, there has been a reduction in voter participation which is counter-productive in a representative democracy;
>
> (v) The people of the state of Wyoming have determined that the declarations and findings contained herein threaten their vital interest in main-

---

2. The facts set forth herein have been gleaned from the Revised Stipulation of Facts filed in the district court on February 13, 2004.

3. The question of congressional term limits is not presently before this Court, that matter having been decided against state-imposed term limits in *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). *See* Dwayne A. Vance, *State–Imposed Congressional Term Limits: What Would the Framers of the Constitution Say?*, 1994 B.Y.U. L.Rev. 429 (1994) and Martin E. Latz, *The Constitutionality of State–Passed Congressional Term Limits*, 25 Akron L.Rev. 155 (1991).

taining the integrity of their state and federal office holders and avoiding the appearance of corruption and lack of response to the needs of the people of Wyoming. It is their purpose and intent in enacting this law that term limitations is the best method by which to insure that these vital interests are guarded for the people of the state.

1992 Initiative No. 1, § 2.

[¶ 6] Appellant Cathcart is a current member of the Wyoming Senate who will have served twelve years by the end of this term. Appellant Anderson is a current member of the Wyoming House of Representatives who will have served twelve years by the end of this term. Both Cathcart and Anderson meet all the qualifications for holding office contained in Wyo. Const. art. 3, § 2 and art. 6, §§ 2 and 15. Appellants Zimmerman and Kennedy are both residents and qualified electors of Laramie County who are represented in the legislature by Cathcart and Anderson. The term limit law precludes Zimmerman and Kennedy from voting in the next election for Cathcart and Anderson for their current positions, and it precludes Cathcart and Anderson from being elected to the same.

## STANDARD OF REVIEW

[¶ 7] When questions of law are certified to this court pursuant to W.R.A.P. 11, we rely entirely on the district court's factual determinations. *BP America Production Co. v. Madsen,* 2002 WY 135, ¶ 4, 53 P.3d 1088, 1090 (Wyo.2002). The question of the constitutionality of a statute is a question of law. *Reiter v. State,* 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001) (*quoting V–1 Oil Co. v. State,* 934 P.2d 740, 742 (Wyo.1997)). Our standard of review in such cases has been described as follows:

"In reviewing a constitutionally based challenge to a statute, we presume the statute to be constitutional and any doubt in the

matter must be resolved in favor of the statute's constitutionality. *Thomson v. Wyoming In–Stream Flow Committee,* 651 P.2d 778, 789–90 (Wyo.1982). [Appellant] bears the burden of proving the statute is unconstitutional. *Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995)."

*Reiter,* 2001 WY 116, ¶ 7, 36 P.3d at 589 (*quoting V–1 Oil Co.,* 934 P.2d at 742). In *Reiter,* we went on to characterize the burden of challenging the constitutionality of a statute as being "heavy," in that the appellant must " ' "clearly and exactly show the unconstitutionality beyond any reasonable doubt." ' " *Reiter,* 2001 WY 116, ¶ 7, 36 P.3d at 589 (*quoting Michael v. Hertzler,* 900 P.2d 1144, 1146 (Wyo.1995) and *Miller v. City of Laramie,* 880 P.2d 594, 597 (Wyo.1994)).

## DISCUSSION

### AFFIRMATIVE DEFENSES

#### *Procedural Background*

[¶ 8] As mentioned above, the secretary of state raised nine affirmative defenses in his answer to the complaint: standing, laches, estoppel, adequate remedy at law (repeal), waiver, failure to state a claim (justiciable controversy/political question), failure to state a claim (period of limitations in Wyo. Stat. Ann. § 1–3–109), failure to state a claim (period of limitations in Wyo. Stat. Ann. § 22–24–122), and the people's reserved right to reform, alter or abolish government. The intervenors raised the same defenses in their answer.

[¶ 9] During the hearing on the motion to intervene, the district court summarily rejected all of the affirmative defenses. A written order to that effect subsequently was entered, in which order the district court certified that the matter was final for purposes of appeal under W.R.C.P. 54(b).[4] The district court took this somewhat precipitous action specifically to assist in getting the entire matter before this Court in a timely

---

4. W.R.C.P. 54(b) states, in pertinent part:
   *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are in-

volved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

manner.[5] The rejection of the affirmative defenses is the subject of the appeals in Docket Nos. 04-33 and 04-34. For some reason not made clear in the record or in the parties' briefs, three of those defenses—laches and the statutes of limitations—were also presented as a certified question under W.R.A.P. 11.[6] We accepted that certified question, but we have since concluded that W.R.A.P. 11 certification is not an appropriate mechanism for reviewing questions of such nature that have been determined by the district court. Consequently, we will address the affirmative defenses as they have been presented in the two appeals.

[¶ 10] An additional issue concerning the affirmative defenses has arisen as a result of the manner in which they have or have not been raised before this Court. In the appellate brief of the secretary of state, the ninth affirmative defense—the reserved powers of the people—is the primary focus of the central constitutional argument, and separate arguments are presented only as to laches and the statutes of limitations. In their appellate brief, the intervenors complain generally about the district court's summary disposition of the affirmative defenses, but they raise separate arguments only in regard to laches, estoppel, and the statutes of limitation. Like the secretary of state, the intervenors have argued the issue of the reserved powers of the people as part of their constitutional argument and do not make a distinct argument on that issue as an affirmative defense. Despite these procedural peculiarities, we have concluded that the material facts are not in dispute and that this Court is able to address on the merits the district court's rejection of the affirmative defenses.

### *Standing*

[¶ 11] In *Jolley v. State Loan and Inv. Board,* 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo.2002), we reiterated our rules for determining whether a party has standing to bring a particular matter before the courts:

Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy. *Roe v. Board of County Commissioners, Campbell County,* 997 P.2d 1021, 1022 (Wyo. 2000) (quoting *Memorial Hospital of Laramie County v. Department of Revenue and Taxation of State of Wyoming,* 770 P.2d 223, 226 (Wyo.1989) and *Washakie County School District Number One v. Herschler,* 606 P.2d 310, 316 (Wyo.1980)).

"The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake. The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy."

*State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo. 1995) (quoting *Schulthess v. Carollo,* 832 P.2d 552, 556-57 (Wyo.1992) (citations omitted)).

*Roe,* 997 P.2d at 1022-23.

[¶ 12] The facts of this case do not present a serious challenge to the standing of the appellant legislators and the appellant electors to bring this declaratory judgment

---

5. The filing period for these legislative offices is during May 2004.

6. W.R.A.P. 11.01 states, in pertinent part:
   The supreme court may answer questions of law certified to it by a federal court or a state district court, and a district court may answer questions of law certified to it by a circuit court, municipal court or an administrative agency, if there is involved in any proceeding before the certifying court or agency a question of law which may be determinative of the cause then pending in the certifying court or agency and concerning which it appears there is no controlling precedent in the decisions of the supreme court.

action.[7] Without immediate judicial attention, the appellant legislators will be unable to seek re-election and the appellant electors will be unable to cast a ballot for those legislators. The term limit law has an immediate and profound impact upon the appellants' interests. Furthermore, we have relaxed the standing requirement where matters of great public interest or importance are involved. *Jolley*, 2002 WY 7, ¶ 9, 38 P.3d at 1077. No one in this controversy disputes its public significance. We conclude that the appellants have standing to bring this action.

### Laches

[¶ 13] [T]he doctrine of laches also applies to declaratory judgment actions. See *Anderson [v. Wyoming Dev. Co.*, 60 Wyo. 417], 154 P.2d 318 [ (1944) ]. The defense of laches is a form of equitable estoppel based on a[n] unreasonable delay by a party in asserting a right. Laches does not depend on the passage of time alone; the plaintiff must be chargeable with lack of diligence in failing to proceed more promptly. *Campbell County Sch. Dist. v. Catchpole*, 6 P.3d 1275, 1284 (Wyo. 2000). Laches will apply when the delay has worked injustice, prejudice, or disadvantage to the defendant. *Id.*

We have said:

"The length of time during which the party neglects the assertion of his rights which must pass in order to show laches varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them."

*Hammond v. Hammond*, 14 P.3d 199, 201 (Wyo.2000) (quoting *Anderson*, 154 P.2d at 346). Should an aggrieved party neglect the assertion of his rights for an amount of time that works injustice, prejudice, or disadvantage to the defendant, laches would apply to prevent a later action. *Cox v. City of Cheyenne*, 2003 WY 146, ¶¶ 32–33, 79 P.3d 500, 510 (Wyo.2003). "A claim of laches is comprised of two elements—inexcusable delay and injury, prejudice, or disadvantage to the defendants or others." *Dorsett v. Moore*, 2003 WY 7, ¶ 9, 61 P.3d 1221, 1224 (Wyo.2003). Application of the equitable defense of laches depends upon the circumstances of each case and is addressed to the sound discretion of the district court. The standard of review is abuse of discretion. *Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021, 1024–25 (Wyo.1989).

[¶ 14] The secretary of state contends that the appellants are guilty of unreasonable delay in bringing this action because they have been on notice as to its effect for twelve years, and he identifies the harm caused by this delay as "prejudice [to] those who left office on the presumptive validity of term limits." To these contentions, the intervenors add the allegation that the filing of this case was purposefully delayed to create a "political frenzy" and to inhibit defense of the term limit statute. Both of the appellees rely upon *Cole v. State ex rel. Brown*, 2002 MT 32, 308 Mont. 265, 42 P.3d 760, 762 (Mont.2002), wherein the Montana Supreme Court applied the doctrine of laches to bar two state legislators and two electors from challenging that state's term limit law nine years after it was enacted by initiative.

[¶ 15] The appellants counter these arguments by reminding this Court that laches has historically been reserved "for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence." *First Nat. Bank of Lander v. First Wyoming Sav. and Loan Ass'n*, 592 P.2d 697, 702 (Wyo.1979). Further, the appellants distinguish *Cole* by noting that it did

---

7. Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2003) states:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

not involve a challenge to the constitutional validity of the term limit law, but rather a challenge to the procedures by which the initiative was enacted.

[¶ 16] The district court rejected application of laches based on its conclusion that the doctrine of "continuing harm" applied.[8] We will find that the district court did not abuse its discretion in rejecting laches, but we will do so upon other grounds revealed in the record, as we may do. *Masinter v. Markstein*, 2002 WY 64, ¶ 8, 45 P.3d 237, 241 (Wyo.2002). Primarily, we find that it was not unreasonable for the appellant legislators to bring this action only after deciding to seek re-election for the upcoming term of office. When else would the action have been more appropriate? Certainly, allegations of a lack of standing or a lack of a justiciable controversy would have had more force were the legislators not actually faced with a term limit. Similarly, the appellant electors would have been unable to contend that their voting rights were being infringed were they not actually faced with an election where their chosen candidates were unable to seek re-election. Furthermore, litigation is costly, time-consuming, and stressful; it was not unreasonable for the appellants to attempt to avoid those consequences until the time that such appeared to be unavoidable. Had the term limit law been repealed in the interim, or had the legislators decided for other reasons not to run again for office, this litigation would have been unnecessary.

[¶ 17] We decline to recognize any precedential value in *Cole* under the circumstances of this case. First, *Cole* itself distinguishes a procedural attack on the method by which an initiative was adopted from a substantive constitutional attack, applying laches only in the former situation. *Cole*, 2002 MT 32, ¶ 31, 42 P.3d at 764. Second, we simply cannot agree with the Montana Supreme Court's

assessment of prejudice to those who in the interim chose not to seek re-election:

> Moreover, to consider Plaintiffs' challenge now, after CI–64 has been in place for nine years, would prejudice those who have relied upon its presumptive validity.... At least some of the executive officers and a large number of state legislators left office in 2000 based upon CI–64's presumptive validity. These former officeholders, their supporters and other potential candidates who made decisions based on CI–64's presumptive validity would be prejudiced by Plaintiffs' late-filed action.

*Id.*, 2002 MT 32, ¶ 32, 42 P.3d at 764. We reject this approach because we see no cause-and-effect relationship between the action of the appellants in filing this action at this particular time and any harm other potential candidates may have suffered from their own decisions not to seek re-election. Those potential candidates, if any, were not harmed by the appellants' decision to seek redress; they were harmed, if at all, by their own inaction and inattention to their constitutional rights.[9]

### Estoppel

[¶ 18] In their respective answers to the complaint, both the secretary of state and the intervenors stated simply that the appellants "should be estopped from pursuing this action." During the brief exchange in the district court concerning the affirmative defenses, counsel for the secretary of state elaborated by stating "[t]here is an estoppel argument that the legislature or legislators are estopped from challenging the law they passed." The district court made no detailed ruling in rejecting estoppel.

[¶ 19] Neither in his appellate brief nor in oral argument has the secretary of state made any argument supporting the application of estoppel in this case. The intervenors, however, have developed the estoppel

---

8. In their appellate briefs, the parties either ignored this justification for the district court's rejection of laches or claimed an inability to find any law on the matter. No doubt, the district court was referring to the concept of "continuing injury" as it may affect application of the statute of limitations. *See Young v. Young*, 709 P.2d 1254, 1259 (Wyo.1985) and *Black's Law Dictionary* 789 (7th ed.1999).

9. We say "if any" because, unlike the situation in *Cole*, the record in the present case does not reveal any Wyoming state legislators who left office based upon the presumptive validity of this state's term limit law. This is the first election since the law's adoption wherein the twelve-year limitation would have an effect.

argument by contending as follows: (1) the legislature amended the term limit law in 1995 to equalize the temporal limitation for senators and representatives; (2) the appellant legislators both voted for this amendment; (3) the appellant legislators should be bound by their official acts; (4) the appellant legislators took an oath to uphold the state constitution; and (5) by now asserting a position inconsistent with their previous publicly expressed acts, the appellant legislators "invite scrutiny."

■■■ [¶ 20] We decline to address this estoppel argument because it lacks cogent analysis and it is not supported by citation to pertinent legal authority. *See In re "H" Children,* 2003 WY 155, ¶ 48, 79 P.3d 997, 1011 (Wyo.2003) and *Garnick v. Teton County School Dist. No. 1,* 2002 WY 18, ¶ 37, 39 P.3d 1034, 1050 (Wyo.2002). All that the intervenors have done is to analogize to the doctrine of judicial estoppel, which prohibits parties from maintaining inconsistent positions in judicial proceedings. *Markstein v. Countryside I, L.L.C.,* 2003 WY 122, ¶ 27, 77 P.3d 389, 397 (Wyo.2003) (*quoting Amoco Production Co. v. Board of County Com'rs of County of Sweetwater,* 2002 WY 154, ¶ 17, 55 P.3d 1246 ¶ 17 (Wyo.2002)). We are not prepared, at least without more compelling guidance, to adopt a "legislative estoppel" doctrine whereby a legislator, in his individual capacity, is forevermore barred from challenging the constitutionality of a statute for which he voted in his official capacity. Beyond that, it must be remembered that Wyoming's term limit law was adopted by initiative, not by legislation. The appellant legislators' later vote to ameliorate some of the effects of the law is not necessarily inconsistent with their present position that it is unconstitutional.

### Waiver

■■■■■ [¶ 21] "A waiver is 'the intentional relinquishment of a known right that must be manifested in some unequivocal manner.' " *O'Donnell v. Blue Cross Blue Shield of Wyoming,* 2003 WY 112, ¶ 12, 76 P.3d 308, 313 (Wyo.2003) (*quoting Jensen v. Fremont Motors Cody, Inc.,* 2002 WY 173, ¶ 16, 58 P.3d 322, 327 (Wyo.2002)). The

three elements of waiver are (1) an existing right; (2) knowledge of the right; and (3) an intent to relinquish it. *Jensen,* 2002 WY 173, ¶ 16, 58 P.3d at 327. " 'While the necessary intent for waiver may be implied from conduct, the conduct should speak the intent clearly.' " *Id.* (*quoting Murphy v. Stevens,* 645 P.2d 82, 93 (Wyo.1982)). Waiver is especially difficult to prove where the allegation is based on silence:

> A thorough explanation of "intent to waive" is given in 28 Am.Jur.2d *Estoppel and Waiver* § 209 (2000). This section explains, "mere silence is no waiver unless there is an obligation to speak, or if the silence or inaction is for so long a period as to show intention to yield a known right." ... We cannot point to a single instance where we have held that mere silence and delay in asserting a claim without more constitutes the *unequivocal* manifestation of intent required for a claim of waiver. To the contrary, we have held that simply failing to commence an action sooner does not mean that a plaintiff waives any right that he had. *Flygare v. Brundage,* 76 Wyo. 350, 302 P.2d 759, 764 (1956).

*Jensen,* 2002 WY 173, ¶ 20, 58 P.3d at 327–28 (emphasis in original). Finally, waivers of statutory and constitutional rights are not favored. *Id.,* 2002 WY 173, ¶ 22, 58 P.3d at 328.

■■■ [¶ 22] Despite listing waiver as an affirmative defense in their answers to the complaint, neither appellee has presented a waiver argument to this court. We have mentioned the elements of waiver and discussed the doctrine to a limited extent to demonstrate that it differs from, and was not, therefore, covered by the appellees' contentions in regard to laches or estoppel. Because the appellees have presented neither cogent analysis nor citation to pertinent authority, we will affirm the district court's rejection of waiver as an affirmative defense.

### Adequate Remedy at Law (Repeal)

■■■ [¶ 23] The focus of the parties and both the district court and this Court has been upon the constitutional and declaratory judgment aspects of this case. The complaint, however, also contained a request for

injunctive relief. As an equitable remedy, an injunction is not available where there is an adequate remedy at law. *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo.2003) (*quoting Weiss v. Pedersen*, 933 P.2d 495, 498–99 (Wyo.1997)). We presume that this is the legal context within which the appellees have raised "adequate remedy at law" as an affirmative defense.

[¶ 24] We decline to make any ruling on the injunctive aspects of this case. While it is true that the district court summarily rejected this affirmative defense along with all the others, it did not issue an injunction and the matter of an injunction has not been raised in this Court by any of the parties to this appeal. In particular, neither of the appellees has attempted to demonstrate to this Court how the fact that the legislature could repeal a statute somehow shuts the courthouse door on a plaintiff who wants to assert that his constitutional rights are being violated by that statute. Without cogent analysis or citation to pertinent legal authority, we will not consider the matter.

### Justiciable Controversy/Political Question

[¶ 25] The full statement of this affirmative defense by both appellees is as follows: "The Complaint fails to state a claim upon which relief may be granted as it fails to state a 'justiciable controversy' and involves a political question." This language suggests that the defense is presented pursuant to W.R.C.P. 12(b)(6), which dictates how certain defenses are to be presented, but no particular issue is raised as to the application of that procedural rule. At the outset, we will note that the lack of a justiciable controversy and the existence of a political question are related concepts, but not wholly interchangeable:

"Under the umbrella of the justiciable controversy concept stand 'the political question[s] doctrine, the administrative questions doctrine, the advisory opinions doctrine, the feigned and collusive cases doctrine, the doctrine of standing, the doctrine of ripeness, and the doctrine of mootness.' *Reiman [Corp. v. City of Cheyenne]*, 838 P.2d [1182] at 1186 [ (Wyo.

1992) ]. 'These doctrines are premised upon jurisprudential principles which are designed to promote judicial economy and the wise exercise of judicial power.' *Id.*" *In re SNK*, 2003 WY 141, ¶ 17, 78 P.3d 1032, 1037 (Wyo.2003) (*quoting Southwestern Public Service Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1142–43 (Wyo.1999)). The concept of a justiciable controversy generically describes controversies that are fit for judicial resolution, with the individual doctrines aimed at isolating the circumstances in which courts should withhold decisions. *Reiman Corp. v. City of Cheyenne*, 838 P.2d 1182, 1186 (Wyo.1992). The political questions doctrine focuses upon those matters where there is " 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; * * * or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; * * * or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.' " *State ex rel. Schieck v. Hathaway*, 493 P.2d 759, 762–63 (Wyo.1972) (*quoting Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962)). *See also Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 984 (1918). While the appellees have included the political questions doctrine as part of their affirmative defense characterized as the lack of a justiciable controversy, they have presented no argument or authority supporting application of the doctrine and we will not further consider it.

[¶ 26] The existence of a justiciable controversy is a jurisdictional prerequisite to the presentation of a claim for relief under the Uniform Declaratory Judgments Act. *White v. Board of Land Com'rs*, 595 P.2d 76, 79 (Wyo.1979). We previously have identified the elements necessary to establish a justiciable controversy under that Act:

1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely polit-

ical, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Cox*, 2003 WY 146, ¶ 10, 79 P.3d at 505 (quoting *Reiman Corp.*, 838 P.2d at 1186).

[¶ 27] Citing to *Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318, 336 (1944), the appellees contend that there is no justiciable controversy presently before this Court because the appellants are barred from pursuing a declaratory judgment action by the doctrine of laches or by the applicable statutes of limitations. This argument must fail because, elsewhere in this opinion, we have concluded that the appellants' action is not so barred. Furthermore, this Court has already recognized that the right to seek election to a public office for which one has proper qualifications, and the effect of any limitation upon that right upon the electors' right to vote, are so fundamental and of such great public interest and importance that the rule requiring the existence of a justiciable controversy should be relaxed or should not be followed. *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974).

[¶ 28] All of the elements of a justiciable controversy exist in these cases. The battle is existing and real, it is of a truly adversarial nature, and the decision of this Court will act as a final determination of the rights of the parties. Even were that not so, the matter is of such public import as to satisfy the juris-dictional requirements of the Uniform Declaratory Judgments Act.

### Statutes of Limitations

[¶ 29] A "statute of limitations" in a civil action is defined as follows:

A statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered).... The purpose of such a statute is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh.

*Black's Law Dictionary* 1422 (7th ed.1999). There are two statutes of limitations of arguable application in the present case—Wyo. Stat. Ann. § 1–3–105(a)(iv)(C) (LexisNexis 2003) and Wyo. Stat. Ann. § 22–24–122.[10] They read as follows:

(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

. . .

(iv) Within four (4) years, an action for:

. . .

(C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated[.]

Wyo. Stat. Ann. § 1–3–105.

Any person aggrieved by any determination made under this article, by the secretary of state or by the attorney general, may bring an action in the district court of Laramie county to have the determination reviewed by filing application within thirty (30) days of the date on which notice of the determination was given.

Wyo. Stat. Ann. § 22–24–122.

[¶ 30] Wyoming is a "discovery state," which means that the statute of limi-

---

**10.** In his answer to the complaint, the secretary of state actually raised as an affirmative defense the ten-year period of limitations found in Wyo. Stat. Ann. § 1–3–109, and that is the statute mentioned in the certified questions. The intervenors' answer, however, referred both to Wyo. Stat. Ann. § 1–3–109 and to Wyo. Stat. Ann. § 1–3–105(a)(iv)(C). As we noted in *Cox*, 2003 WY 146, ¶ 28, 79 P.3d at 509, the latter statute of limitations governs declaratory judgment actions, and that is the statute that both appellees have argued before this Court.

tations is triggered when the plaintiff knows or has reason to know of the existence of a cause of action. *Amoco Production Co. v. EM Nominee Partnership Co.*, 2 P.3d 534, 542 (Wyo.2000). "The statute begins to run from the first time claimants are chargeable with information which should lead them to believe they have a claim." *Rawlinson v. Cheyenne Bd. of Public Utilities*, 2001 WY 6, ¶ 12, 17 P.3d 13, 16 (Wyo.2001). The application of a statute of limitations is a mixed question of law and fact, unless, as here, the material facts are not in dispute. In such case, the question is one of law. *McCreary v. Weast*, 971 P.2d 974, 978 (Wyo.1999) (*quoting Mills v. Garlow*, 768 P.2d 554, 555 (Wyo. 1989)). While statutes of limitation should be liberally construed to effect their intention, courts may not extend a statute by liberal construction to claims not clearly barred thereunder. *Gustafson v. Bridger Coal Co.*, 834 F.Supp. 352, 357 (D.Wyo.1993); *John Meier & Son, Inc. v. Horse Creek Conservation Dist. of Goshen County*, 603 P.2d 1283, 1287 (Wyo.1979); 51 Am.Jur.2d *Limitation of Actions* § 54 (2000).

■ [¶ 31] We will first discuss the thirty-day period of limitations found in Wyo. Stat. Ann. § 22–24–122. The right of the people to adopt laws through the initiative process is found in Wyo. Const. art. 3, § 52. The constitution does not contain a period of limitation for challenging an initiative, but it does provide that "[a]dditional procedures for the initiative and referendum may be prescribed by law." Wyo. Const. art. 3, § 52(f).

[¶ 32] Wyo. Stat. Ann. § 22–24–122 is part of Title 22 (Elections), Chapter 24 (Initiative and Referendum). Those statutes are the "procedures prescribed by law" for implementation of the constitutionally created initiative right. The thirty-day period of limitation contained in Wyo. Stat. Ann. § 22–24–122 clearly and unambiguously applies only to determinations made by the secretary of state or by the attorney general "under this article...."[11] It just as clearly and unambiguously does not apply to substantive constitutional challenges to particular laws adopted via initiative. No doubt, the period is so short—thirty days—because it is intended only to bar challenges to the election, itself, not to the law thereby adopted. We conclude that the thirty-day period of limitations found in Wyo. Stat. Ann. § 22–24–122 does not act to bar constitutional challenges seeking declaratory and injunctive relief from a law adopted by the initiative process. This conclusion does not conflict with the plurality opinion in *Wyoming Nat. Abortion Rights Action League v. Karpan*, 881 P.2d 281, 289–90 (Wyo.1994), where the facial constitutionality of a proposed initiative was challenged as part of a challenge to the secretary of state's decision to place the initiative on the ballot. In that case, the complaint for declaratory and injunctive relief was brought within the thirty-day period, and no other period of limitation was at issue. *See also Snell v. Johnson County School Dist. No. 1*, 2004 WY 19, ¶¶ 14–18, 86 P.3d 248, 254–56 (Wyo.2004) (constitutional claim related to bond election procedures, but not constitutional claim related to use of bond funds, subject to election code statute of limitations).

■ [¶ 33] The appellees' second statute of limitations argument is based upon the four-year period of limitations found in Wyo. Stat. Ann. § 1–3–105(a)(iv)(C). The appellees contend that the appellants knew or had reason to know of the existence of their constitutional claims either in 1992 when the secretary of state accepted the term limit initiative for placement on the ballot, or in 1993 when the law went into effect. Neither appellee cites any specific authority where a court applied a statute of limitations to bar a claim in a similar situation. Rather, they rely on our general discovery jurisprudence.

[¶ 34] We recently addressed the courts' role in enforcing statutes of limitation:

Statutes of limitations are pragmatic devices to save courts from stale claim litigation. *Duke v. Housen*, 589 P.2d 334, 340 (Wyo.), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). Such statutes represent legislative and public policy controlling the right to litigate. *Id.* They are arbitrary by their very nature, and we must give full force to the applica-

---

11. Article 1 of Chapter 24 contains the initiative and referendum election procedures.

ble statutes without regard to the merits of the particular claim. *Id. When a statute of limitations is being considered, the nature and extent of the injury and the amount of money damages involved are only significant in the effect they may have on when the cause of action arose and when the time expired for pursuing the applicable judicial remedy.* 589 P.2d at 340.

*Rawlinson,* 2001 WY 6, ¶ 9, 17 P.3d at 15–16 (emphasis added). Even though the present cases do not involve an injury and money damages, the emphasized language from *Rawlinson* is helpful in determining when the appellants' cause of action accrued in these cases.

[¶ 35] A specific plaintiff's cause of action for a tort, such as a motor vehicle accident, can readily be seen to be discoverable at such time as that specific plaintiff realizes that he or she was injured by the tortious conduct. Similarly, a specific plaintiff's cause of action for breach of contract can readily be seen to be discoverable at such time as that specific plaintiff realizes that he or she was injured by the breach. But what about all of the potential plaintiffs whose constitutional rights to seek public office or to vote may have been violated by the enactment of a term limit law, whether by initiative or legislation? Does the statute of limitation begin to run for everyone alike on the day the law is adopted? Or does it begin to run on that date only for those persons presently in public office? Did it also begin to run on that date for persons only later elected to public office, or does it begin to run for those persons on the date they take office? In answering those questions we should be mindful that the statute of limitations is only a tool for avoiding the adjudication of stale claims; it is not an end in itself.

[¶ 36] We hold that in the context of the present case, the appellant legislators' causes of action did not accrue until they were actually faced with the reality of being foreclosed from seeking re-election, and that the appellant electors' causes of action did not accrue until they were actually faced with the reality of not being able to vote for their chosen candidates. We reach this decision for sev-

eral reasons. First, the fact that the term limit law impinges upon fundamental constitutional rights inclines us toward a restrictive application of the statute of limitations. Second, holding that the statute begins to run upon adoption of the term limit law would affect the rights of not just the present litigants, but of untold numbers of potential future office-holders and electors who had no reason in 1992 or 1993 to recognize the law's impact upon them ten or twenty years later. And third, these are not stale claims in the sense that witnesses have disappeared, or memories have faded, or evidence has been lost. The constitutional issues do not depend upon anything that happened in 1992. For that reason, application of the statute of limitations to bar this action would not serve the statute's identified purpose. We affirm the district court's rejection of the appellees' affirmative defenses based upon the statutes of limitation.

### CONSTITUTIONALITY

[¶ 37] The parties have not addressed this issue, but we note that the constitutionality of a statute may only be questioned by a party whose rights are affected thereby. *Stagner v. Wyoming State Tax Com'n,* 682 P.2d 326, 331 (Wyo.1984); *Alberts v. State,* 642 P.2d 447, 452 (Wyo.1982). Likewise, a party cannot assert that a statute is unconstitutional as to other persons or classes of persons. *Mahaney v. Hunter Enterprises, Inc.,* 426 P.2d 442, 444 (Wyo.1967). These precepts suggest that the appellant legislators cannot raise the question of the constitutionality of the term limit law as it affects the qualifications for governor found in Wyo. Const. art. 4, § 2, and for secretary of state, auditor, treasurer, and superintendent of public instruction found in Wyo. Const. art. 4, § 11. Furthermore, the appellant voters have not alleged an inability to vote for particular candidates for the executive branch offices. Accordingly, we will limit our holding to those constitutional provisions involving legislative qualifications.

[¶ 38] We will consider several constitutional provisions in the ensuing discussion. Of primary significance are the following:

All power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish the government in such manner as they may think proper.

Wyo. Const. art. 1, § 1.

Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.

Wyo. Const. art. 1, § 3.

Senators shall be elected for the term of four (4) years and representatives for the term of two (2) years. The senators elected at the first election shall be divided by lot into two classes as nearly equal as may be. The seats of senators of the first class shall be vacated at the expiration of the first two years, and of the second class at the expiration of four years. No person shall be a senator who has not attained the age of twenty-five years, or a representative who has not attained the age of twenty-one years, and who is not a citizen of the United States and of this state and who has not, for at least twelve months next preceding his election resided within the county or district in which he was elected.

Wyo. Const. art. 3, § 2.

(a) The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum.

. . .

(g) The initiative shall not be used to ... enact that prohibited by the constitution for enactment by the legislature.

Wyo. Const. art. 3, § 52.

The rights of citizens of the State of Wyoming to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this state shall equally enjoy all civil, political and religious rights and privileges.

Wyo. Const. art. 6, § 1.

Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein otherwise provided.

Wyo. Const. art. 6, § 2.

No person except a qualified elector shall be elected or appointed to any civil or military office in the state....

Wyo. Const. art. 6, § 15.

■■■ [¶ 39] We have said numerous times that, in construing the state constitution, this Court follows the same rules that govern construction of a statute, and that our fundamental purpose is to ascertain the intent of the framers. *Director of Office of State Lands & Investments v. Merbanco, Inc.,* 2003 WY 73, ¶ 33, 70 P.3d 241, 252 (Wyo.2003); *Geringer v. Bebout,* 10 P.3d 514, 520–21 (Wyo.2000); *Management Council of Wyoming Legislature v. Geringer,* 953 P.2d 839, 843 (Wyo.1998); *Brimmer,* 521 P.2d at 580. We look first to the plain and unambiguous language to determine intent. *Merbanco,* 2003 WY 73, ¶ 33, 70 P.3d at 252; *Riedel v. Anderson,* 2003 WY 70, ¶ 39, 70 P.3d 223, 234 (Wyo.2003); *Geringer,* 10 P.3d at 521; *Management Council,* 953 P.2d at 843. If the language is plain and unambiguous, there is no need for construction, and we presume the framers intended what was plainly expressed. *Geringer,* 10 P.3d at 521; *Management Council,* 953 P.2d at 843; *Rasmussen v. Baker,* 7 Wyo. 117, 50 P. 819, 821 (1897).

■■■ [¶ 40] Every statement in the constitution must be interpreted in light of the entire document, with all portions thereof read *in pari materia.*[12] *Management Council,* 953 P.2d at 845; *Thomson v. Wyoming*

---

12. *In pari materia* means that all provisions relating to the same matter are read together. *Black's Law Dictionary, supra,* at 794.

*In–Stream Flow Committee,* 651 P.2d 778, 790 (Wyo.1982).

> Our cases explain that every statement in the constitution must be interpreted in light of the entire document, rather than as a series of sequestered pronouncements, and that the constitution should not be interpreted to render any portion of it meaningless, with all portions of it read in pari materia and every word, clause and sentence considered so that no part will be inoperative or superfluous.

*Geringer,* 10 P.3d at 520. Furthermore, the rule that a statute that enumerates the subjects or things on which it is to operate, or the persons affected, or forbids certain things, is to be construed as excluding from its effect all those not expressly mentioned— *expressio unius est exclusio alterius*—is applicable in construing constitutional provisions. *In re West Highway Sanitary and Imp. Dist.,* 77 Wyo. 384, 317 P.2d 495, 504 (1957). And finally, in construing constitutional provisions, courts will not ignore the general spirit of the instrument. *Thomson,* 651 P.2d at 782; *Witzenburger v. State ex rel. Wyoming Community Development Authority,* 575 P.2d 1100, 1129 (Wyo.1978); *Schaefer v. Thomson,* 240 F.Supp. 247, 253 (D.Wyo.1964).

[¶ 41] Before we apply these tenets of construction to the issues at hand, it is necessary that we first identify those issues. The best way to do that is to relate the positions taken by the parties. The appellants contend that the term limit law is unconstitutional because it adds qualifications for holding office to the exclusive qualifications found in the constitution. The appellants further contend that the people cannot do through an initiative what the legislature cannot do by legislation. Finally, the appellants argue that the constitution may only be supplemented or changed through the formal amendment process.[13]

[¶ 42] In their appellate briefs, the appellees took an unqualified stance in favor of the people's "reserved" rights and power. The secretary of state's appellate brief opened with the following passage from the Declaration of Independence:

> That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed. That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its power in such form, as to them shall seem most likely to effect their Safety and Happiness.

After averring that Wyo. Const. art. 1, § 1 "echoes these words," the secretary of state argued that "[t]he rights reserved and retained by the people upon the creation of the government are superior to the rights enumerated in the Constitution." The intervenors made a similar argument: "As articulated in Article 1, § 1, the power inherent in the people provides the foundation for Wyoming's system of government. If that system is only subject to changes and improvements originating from within, the people have no effective means of protecting their indefeasible right."

[¶ 43] By raising these arguments, the appellees have brought into question the very nature of constitutional government. The Declaration of Independence was, after all, a document intended to justify a revolution. By ascribing the same intent to Wyo. Const. art. 1, § 1, the appellees appear to have taken the position that the constitution, itself, authorizes the extra-constitutional exercise of power by the people.[14] We find that notion troublesome, given the function of a constitution:

> As used herein, the word "constitution" means a declaration of fundamental laws or principles for the government of a na-

---

13. Wyo. Const. art. 20 provides specific procedures whereby amendments may be proposed by the legislature and adopted at a general election, or may be adopted at a constitutional convention proposed by the legislature and approved at a general election.

14. They may not be alone in that contention. In an appendix to his dissent in *Scales v. United States,* 367 U.S. 203, 275, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), Justice Douglas included the Wyoming Constitution as one of fifteen making "specific provision for the right of revolution...."

tion or state. A constitution represents the supreme written will of the people regarding the framework for their government. Where a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and it is the paramount authority for all that is done in pursuance of its provisions. A constitution thus embodies fundamental values and articulates the citizens' common aspirations for constitutional governance and the rule of law. A state constitution is likewise the supreme written will of the people of a state regarding the framework for their government and is subject only to the limitations found in the Federal Constitution. Although a constitution may be either written (as in the case of the United States) or unwritten (as in the case of Great Britain), the word "constitution," as applied to the organization of our federal and state governments, always implies a written document which is understood to have been enacted by the direct action of the people, providing for the form of their government and defining the powers of the several departments within it, thus creating a fundamental law which is absolute and unalterable except through amendment by the people from which it emanated.

16 Am.Jur.2d *Constitutional Law* § 1 (1998) (footnotes omitted); *see also* 1 Thomas M. Cooley, *Constitutional Limitations* 4 (Walter Carrington ed.1927).

[¶ 44] We conclude that Wyo. Const. art. 1, § 1 recognizes the ultimate right of the people to "alter, reform or abolish" government, through peaceful means or otherwise, but when read *in pari materia* with the rest of the constitution, it does not contemplate the adoption of laws under the existing government, whether by legislation or initiative, other than through constitutionally established means. The appellees conceded as much at oral argument when they conceded that Wyo. Const. art. 1, § 1 is limited by Wyo. Const. art. 3, § 52(g). In other words, the inherent and reserved powers of the people do not include, under this constitution, the right to enact via the initiative a law that could not be enacted by the

legislature. More than a century ago, this Court recognized that the power of the people to change government is controlled by the constitution:

> The sovereignty resides in the people, although, by written constitutions, they have delegated the exercise of sovereign powers to several departments. The people "retain in their own hands a power to control the governments they create as far as they have thought needful to do so; and the three departments are responsible to and subject to be ordered, directed, changed, or abolished by them. But this control and direction must be exercised in the legitimate mode previously agreed upon." Cooley, Const. Lim. 598.

*Rasmussen,* 50 P. at 822. The "legitimate mode previously agreed upon" is the constitutional amendment process found in Wyo. Const. art. 20.

[¶ 45] The conclusion that the people cannot do via the initiative what the legislature cannot do by legislation leads to the next question, which is the nature and extent of the legislature's authority under the Wyoming Constitution. We have said that a constitution is not a grant but a limitation upon legislative power. *Witzenburger,* 575 P.2d at 1124; *State v. Snyder,* 31 Wyo. 333, 225 P. 1102, 1105 (1924). Consequently, the legislature may enact any law not expressly or inferentially prohibited by the constitution. *Merbanco,* 2003 WY 73, ¶ 45, 70 P.3d at 256; *Witzenburger,* 575 P.2d at 1124; *Budge v. Board of Com'rs of Lincoln County,* 29 Wyo. 35, 208 P. 874, 876 (1922). This plenary power of the legislature is the rule for all purposes of civil government, and a prohibition to exercise a particular power is an exception. *State ex rel. Bennett v. Barber,* 4 Wyo. 56, 32 P. 14, 16 (1893).

[¶ 46] Returning now to the rules of construction guiding this inquiry, we must first decide whether the constitution is ambiguous in regard to legislative qualifications. Wyo. Const. art. 3, § 2 is certainly unambiguous; to be a senator, one must be at least twenty-five years of age, and to be a representative, one must be at least twenty-one years of age. Both senators and representatives must be

United States citizens and must have resided in the appropriate county or district for at least twelve months. Other constitutional provisions concerning eligibility for legislative office are equally unambiguous. Under Wyo. Const. art. 3, § 8, members of the legislature may not be appointed to any civil office during their respective term. Under Wyo. Const. art. 6, § 15, only qualified electors may be elected or appointed to civil office. And art. 6, § 19 prohibits anyone holding one of certain positions under the United States from holding a state office.

[¶ 47] The precise question, of course, is not whether the constitution establishes unambiguous qualifications for holding legislative office. Rather, the precise question is whether the constitutional qualifications are unambiguously meant to be exclusive. The affirmative answer to that question lies in Wyo. Const. art. 1, § 3, where the framers mandated that "the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex *or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.*" (Emphasis added.) The emphasized language leaves no doubt that *no law*—whether enacted by the legislature through the legislative process or by the people through the initiative process—may condition "political rights and privileges" upon a "circumstance or condition" such as incumbency. And Wyo. Const. art. 6, § 1 clearly identifies "holding office" as one of those political rights and privileges.

[¶ 48] We must be careful not to forget that, where a statute or constitutional provision is unambiguous, there is no need to apply the various rules of construction. In particular, the rule that statutes are presumed to be constitutional is a rule of construction, not an independent rule of law. Courts do, indeed, have a duty to maintain the constitutionality of a statute where possible, but there is an equally imperative duty to declare a statute unconstitutional if it transgresses the state constitution. *Wyoming Coalition v. Wyoming Game and Fish Com'n*, 875 P.2d 729, 732 (Wyo.1994); *Witzenburger*, 575 P.2d at 1114.

[¶ 49] We must also be careful not to forget that this case is not about whether term limits are a good idea. The question is simply whether it was the framers' intent to allow the legislature to add qualifications to those established in the constitution. In reading the pertinent provisions *in pari materia*, and in light of the general spirit of the instrument, we have concluded there was no such intent. In that regard, the leading commentators on the Wyoming Constitution have identified numerous constitutional constraints on legislative power, showing the framers' mistrust of the legislative process. Robert B. Keiter & Tim Newcomb, *The Wyoming State Constitution* 6, 13 (Greenwood Press 1993). This mistrust was not unprecedented. One hundred years earlier, the framers of our federal constitution debated whether legislative bodies should be permitted to determine their own membership qualifications, the fear being that the legislative body could subvert the constitution. *State ex rel. Johnson v. Crane*, 65 Wyo. 189, 197 P.2d 864, 867 (1948) (*quoting* James Madison from 5 *Elliot's Debates on the Federal Constitution* 404).

[¶ 50] The appellees have cited *State ex rel. Benham v. Cheever*, 71 Wyo. 303, 257 P.2d 337, 341 (1953), for the proposition that "any type of initiative or referendum accorded to the voters by the legislature or by the Constitution is a right which should be liberally construed to provide the voters a right to speak." During oral argument, counsel for the intervenors further argued that the fact that seventy-seven percent of the voters had favored term limits was "the most important thing that this court needs to keep in mind." We note once again, however, that construction, liberal or otherwise, of unambiguous provisions is not only unnecessary, but is unwarranted. Wyo. Const. art. 3, § 52(g) specifically denies to the people the right to use the initiative to enact "that prohibited by the constitution for enactment by the legislature." The clear force and effect of that language is a mandate that this Court direct its attention to what the legislature may and may not do. The fact that seventy-seven percent of the voters favored a particular measure does not make that measure

constitutional. Either we live under a constitutional government or we do not.

[¶ 51] Decisions from other states' courts may provide some guidance in the interpretation of constitutional provisions. *Simms v. Oedekoven,* 839 P.2d 381, 384 (Wyo.1992). We have read the cases cited by the parties, and we find them helpful in formulating an analysis, but each case is controlled by the specific wording of the constitutional provision, initiative petition, or statute at issue, or upon the nature of the issue being addressed.[15] Some examples will suffice. In 1995, the Minnesota Supreme Court found that a city charter amendment limiting terms of office for local elected officials violated the state constitution. In *Minneapolis Term Limits Coalition v. Keefe,* 535 N.W.2d 306, 308 (Minn.1995), the court held that, even though the constitution allowed the legislature to provide by law for qualifications for office, term limits were actually "eligibility requirements," which were fixed by the constitution. The following year, the Nebraska Supreme Court, in *Duggan v. Beermann,* 249 Neb. 411, 544 N.W.2d 68, 71–79 (1996), rejected that state's term limit initiative on completely different grounds. Noting that the United States Supreme Court had held in *United States Term Limits, Inc. v. Thornton,* 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) that state-imposed limits upon the terms for congressional offices were unconstitutional, and finding that the portion of the initiative relating to those congressional offices was "so interwoven" with the portion of the initiative relating to term limits for state offices, the court held that the entire initiative had to fail. *Duggan,* 544 N.W.2d at 71. While declining to pass on the question of the validity of the initiative under the state constitution, the court did comment that " 'in adopting the Constitution, the people have imposed upon themselves limitations upon their ability to amend this fundamental law.' " *Duggan,* 544 N.W.2d at 75 (*quoting Duggan v. Beermann,* 245 Neb. 907, 515 N.W.2d 788, 794 (1994) (*Duggan I* )). In *Lehman v. Bradbury,* 333 Or. 231, 37 P.3d 989 (2002), as in *Duggan,* a term limit initiative was found unconstitutional because the provisions establishing term limits for state elective offices were not closely related to the provisions establishing term limits for federal congressional offices, which violated a constitutional mandate that voters be able to vote separately on independent issues. *Id.* at 994–1000.

[¶ 52] Two other term limit cases from 1996 are noteworthy. In *Nevada Judges Ass'n v. Lau,* 112 Nev. 51, 910 P.2d 898 (1996), the Nevada Supreme Court addressed a term limit initiative under a constitutional scheme whereby the initiative could be used directly to amend the constitution. In finding the initiative constitutional against a "barrier to ballot access" challenge, the court held that the right to seek office is not a fundamental right, that the higher level of judicial review of strict scrutiny did not therefore apply, and that states have important election regulation interests. *Id.* at 900–01. Unlike the present case before this Court, however, *Lau's* analysis resulted from due process and equal protection arguments presented by the appellants. The Maine Supreme Court also found that state's term limits initiative constitutional in 1996. That holding, in *League of Women Voters v. Secretary of State,* 683 A.2d 769, 771 (Me.1996), was based on two principles: that initiatives are to be construed liberally to facilitate the people's sovereign power to legislate, and that the power of the legislature is subject only to specific limitations found in the state and federal constitutions. In particular, the court noted that nothing in Maine's constitutional debates suggests the framers intended to make the constitutional qualifications exclusive. *Id.* at 772 n. 7.[16]

15. Relevant cases were recently collected at George L. Blum, Annotation, *Validity, Construction, and Operation of Constitutional and Statutory "Term Limits" Provisions,* 112 A.L.R.5th 1 (2003).

16. We have recognized that resort may be had to the record of the debates from Wyoming's constitutional convention, but we have also noted that they are not a very reliable source of information when attempting to construe any particular word or provision of the constitution. *Merbanco,* 2003 WY 73, ¶ 40, 70 P.3d at 254; *Rasmussen,* 50 P. at 824. The parties have noted some general statements from the debates, but nothing directly bearing upon the specific issue of term limits or

[¶ 53] In *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir.1998), a federal appellate court considered Michigan's term limit law in the face of a challenge based upon the First and Fourteenth Amendments to the United States Constitution. The court found that term limits do not create a ballot access issue, but prescribe qualifications for state office that do not clearly violate the federal constitution, whether analyzed under a balancing test or by giving deference to the state's right to decide how to structure its own government. *Id.* at 920–25. *Miller* exemplifies the difficulty in finding guidance in out-of-state cases. The question there was whether that term limit law violated particular federal constitutional protections, while the question in our case is whether Wyoming's term limit law violates particular provisions of this state's constitution. Likewise, in *Rudeen v. Cenarrusa*, 136 Idaho 560, 38 P.3d 598, 601–06 (2001), our neighboring state's highest court found a term limit law unconstitutional, but did so in the context of a challenge based upon equal protection, and in the context of a state constitution that authorized the legislature to prescribe additional qualifications.[17]

[¶ 54] In *Alaskans for Legislative Reform v. State*, 887 P.2d 960, 961–64 (Alaska 1994), the Alaska Supreme Court found a legislative term limit initiative unconstitutional for several reasons, including: (1) when the conflicting principles of constitutional government and the people's right to express their will conflict, the former must prevail; (2) the constitutional qualifications are exclusive even though not explicitly so; (3) and office-holding qualifications are not mere election regulations. Another case with similar reasoning is *League of Women Voters of Massachusetts v. Secretary of Com.*, 425 Mass. 424, 681 N.E.2d 842 (1997). In finding an initiative-engendered term limits statute unconstitutional, the Supreme Judicial Court of Massachusetts held as follows: (1) the legislature may not change qualifications for public office that are prescribed by the state constitution; (2) term limits are not mere

election regulations, but are qualifications for holding office; (3) the initiative may not be used to accomplish what the legislature cannot accomplish; and (4) "[t]he idea that constitutionally prescribed qualifications may be changed only by constitutional amendment is intuitively sound." *Id.* at 846. This holding comports with the general rule that "where the constitution establishes specific eligibility requirements for a particular constitutional office, the constitutional criteria are exclusive." 63C Am.Jur.2d *Public Officers and Employees* § 51 at 494–95 (1997); Annotation, *Legislative Power to Prescribe Qualifications for or Conditions of Eligibility to Constitutional Office*, 34 A.L.R.2d 155, § 6 (1954). *See also* 42 Am.Jur.2d *Initiative and Referendum* § 10 at 498 (2000) (state legislator term limits are proper subject of initiative unless prohibited by state constitution). Similar holdings can be found in *Gerberding v. Munro*, 134 Wash.2d 188, 949 P.2d 1366, 1370–74 (1998):(1) the initiative is reflective of the reserved power of the people to legislate, but the people in their legislative capacity are subject to constitutional mandates; (2) non-incumbency is a qualification for office; (3) constitutional qualifications are exclusive; and (4) there is a strong presumption in favor of eligibility for office. We agree with the reasoning and the conclusions of these cases. The constitution recognizes the legislature's authority to "provide by law" for the regulation of elections, but it contains no similar recognition of legislative authority to amend the qualifications for holding a constitutional office. *See, for example,* Wyo. Const. art. 6, §§ 11, 14 and 18.

[¶ 55] The dissent in *Gerberding* relies in part on an argument that was also presented to this Court. In assessing constitutional qualifications provisions, some courts have concluded that positively stated qualifications are exclusive, whereas negatively stated qualifications merely set minimums, leaving the legislature free to add additional qualifications. *Gerberding*, 949 P.2d at 1378–79 (Sanders, J., dissenting). Under that theory,

---

the exclusiveness of constitutional qualifications to hold office.

**17.** For a negative analysis of *Rudeen, see* Daniel Roland Anderson, Note, *Rudeen v. Cenarrusa: Tying a Bow on a Bad Day for Idaho,* 38 Idaho L.Rev. 707 (2002).

for instance, a constitutional statement that "twenty-one year old resident citizens can hold office" is an exclusive qualification provision, whereas "no person who is not a twenty-one year old resident citizen can hold office" is not an exclusive qualification provision. The legislature, and the people by initiative, may add qualifications in the latter situation, but not in the former. *See* Annotation, *supra*, 34 A.L.R.2d 155, §§ 4, 6.

■■■ [¶ 56] Application of this lexigraphic rule to Wyo. Const. art. 3, § 2 would mean that its negative wording created non-exclusive legislative qualifications. We are not persuaded, however, that the slight distinction in phraseology between positive wording and negative wording evinces differing intentions. Instead, we continue to believe that " '[i]f no person can be elected to that office who does not possess these qualifications, it follows by a familiar rule of interpretation that any person who does possess them may be elected.' " *Crane*, 197 P.2d at 870 (*quoting Ekwall v. Stadelman*, 146 Or. 439, 30 P.2d 1037, 1038 (1934)). *See also Reale v. Board of Real Estate Appraisers*, 880 P.2d 1205–09 (Colo.1994) and *League of Women Voters*, 683 A.2d at 773 n. 8. *Ekwall* goes on to state that "[t]he very enumeration of them excludes the idea that, in the adoption of the Constitution, the people intended that there should be any other qualifications." *Ekwall*, 30 P.2d at 1038. We agree.[18] The Supreme Court of Arkansas made this point plainly but eloquently in *Mississippi County v. Green*, 200 Ark. 204, 138 S.W.2d 377, 379 (1940):

> The qualifications fixed by the constitution to be county judge in this state inferentially prohibits the legislature from fixing additional qualifications. Why fix them in the first place if the makers of the constitution did not intend to fix all the qualifications required, and why fix only a part of them and leave it to the legislature to fix other qualifications? There is no reasonable answer to these questions. The makers of the constitution knew exactly what qualifications a county judge should have

and fixed them, and of course, fixed all of them and not a part of them. The makers of the constitution intended to cover the whole subject of the qualifications for county judge. Had the makers of the constitution intended otherwise they would have created the office of the county judge with directions to the legislature to fix their qualifications.

■■ [¶ 57] The general rule, and the better-reasoned rule, is that constitutionally prescribed qualifications for holding a constitutional office are exclusive. Even without the assistance of that rule, however, the conclusion is unavoidable that Wyo. Const. art. 1, § 3—one of the earliest sections in the Declaration of Rights—forbids the passage of any law making the exercise of Wyoming citizens' political rights dependent upon a circumstance or condition otherwise than as provided. Incumbency is simply not "individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction." Wyo. Const. art. 1, § 3.

[¶ 58] Lastly, we will address one final argument contained in the appellate brief of the secretary of state:

> The truth of the matter is that the Wyoming Constitution is simply silent on the issue of the adoption of term limits for state officials. Reading these provisions as exclusive is quite simply reading into the constitution something that is not there.

Restated, the contention is that, if the framers of the constitution had intended for term limits to be of constitutional, rather than statutory, stature, they would have provided for term limits within the constitution. Well, interestingly enough, that is exactly what they did. Prior to the adoption of a constitutional amendment in 1982, the state treasurer was constitutionally term limited:

> There shall be chosen by the qualified electors of the state at the times and places of choosing members of the legislature, a secretary of state, auditor, treasurer, and superintendent of public instruction, who shall have attained the age of

---

18.  *Coyne v. State ex rel. Thomas*, 595 P.2d 970, 972 (Wyo.1979) and *Haskins v. State ex rel. Harrington*, 516 P.2d 1171, 1173–74 (Wyo.1973) are

not contrary holdings inasmuch as they are concerned with statutory, rather than constitutional offices.

twenty-five years respectively, shall be citizens of the United States, and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government, for the term of four (4) years and until their successors are elected and duly qualified, *but no person shall be eligible for the office of treasurer for four (4) years next after the expiration of the term for which he was elected.* The legislature may provide for such other state officers as are deemed necessary. (Emphasis added.) Wyo. Const. art 4, § 11 (1890) (amended 1982). Clearly, the framers of the state constitution knew and used the necessary language to establish term limits. That they did not use that language in Wyo. Const. art. 3, § 2, addressing the qualifications and term for legislators, is telling.

[¶ 59] Our conclusion that the term limit law violates the unambiguous and exclusive provisions of the Wyoming Constitution providing eligibility requirements for membership in the state legislature, which conclusion incorporates a response to the separate certified question concerning the reserved powers of the people under Wyo. Const. art. 1, § 1, makes it unnecessary and inappropriate for us to address the issue of whether the law also violates the appellant electors' right to vote under Wyo. Const. art. 6, § 2. *Umbach v. State*, 2002 WY 42, ¶ 14, 42 P.3d 1006, 1009 (Wyo.2002); *In re LePage*, 2001 WY 26, ¶ 18, 18 P.3d 1177, 1181 (Wyo.2001); *Nehring v. Russell*, 582 P.2d 67, 71 (Wyo.1978); *Schoeller v. Board of County Com'rs of Park County*, 568 P.2d 869, 879 (Wyo.1977). *See also United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir.1996) and *United States v. Santiago*, 846 F.Supp. 1486, 1497 n. 12 (D.Wyo.1994).

## CONCLUSION

[¶ 60] We answer the certified questions as follows:

1. The term limit law (Wyo.Stat.Ann. § 22–5–103), as it applies to candidates for the state legislature, whether adopted by initiative or legislative action, is unconstitutional and unenforceable because it violates Wyo. Const. art. 1, § 3, and art. 3, §§ 2 and 52(g).

2. We decline to address the question of whether the term limit law also violates the appellant electors' right to vote under Wyo. Const. art. 6, § 2.

3. The reserved powers of the people under the Wyoming Constitution do not include the right to alter the government by initiative or by statute with regard to the time period any one person can hold a state legislative office.

4. We decline to address the affirmative defenses of laches and the statutes of limitations as certified questions, but have answered them as part of the appeals in this matter.

[¶ 61] Remanded to the district court for entry of an order consistent herewith.